878 F.2d 263
 26 Soc.Sec.Rep.Ser. 198, Unempl.Ins.Rep. CCH 14710A
Richard BRINKMAN, and other persons similarly situated,
Plaintiffs-Appellees,
v.
Karen RAHM, in her official capacity as Secretary of the
Washington Department of Social and Health Services; Lyle
Quasim, in his official capacity as Director of Division of
Mental Health; Darrell Hamilton, M.D., in his official
capacity as Superintendent of Western State Hospital;
Harold Robb, in his official capacity as Superintendent of
Eastern State Hospital; Patricia Quesnel, in her official
capacity as Chief of the Office of Financial Recovery; and
their successors, Defendants-Appellants.
 No. 87-4074.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 7, 1988.
Decided June 19, 1989.
 
 Mark C. Barrett, Asst. Atty. Gen., Olympia, Wash., for defendants-appellants.
 Michael J. Mirra, Evergreen Legal Services, Seattle, Wash., for plaintiffs-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before SCHROEDER, ALARCON and NORRIS, Circuit Judges.
 PER CURIAM:
 
 
 1
 This is an appeal from the district court's decision that the Social Security Act preempts the state of Washington's procedures for seeking reimbursement from patients involuntarily committed to state hospitals. We affirm.
 
 BACKGROUND
 
 2
 Plaintiffs-appellees are a class of patients involuntarily committed to Washington state mental hospitals. The class is defined as those patients who receive Social Security Old Age Survivor's and Disability Insurance (OASDI) benefits, and for whom the state is not the representative payee. The defendants-appellants are officials of the State of Washington Department of Social and Health Services.
 
 
 3
 At issue is the state's policy of seizing appellees' OASDI funds in order to reimburse the state for the cost of patient care and maintenance. Under Washington law, patients committed to state mental hospitals are liable to the state for the cost of their commitment. See RCW 71.02.411 et seq. The state collects this debt from the appellees by withdrawing OASDI funds from appellees' accounts at the state hospital accounting offices. Once it is determined that a patient at one of the state hospitals is liable for the costs of his or her hospitalization, the patient is sent a document entitled "Notice and Finding of Responsibility." This notice sets out the liability of the patient for his or her cost of care. It informs the patients that they may appeal the determination of liability by writing to the State Department of Social and Health Services. The notice states that the patient's income from Social Security and other benefits, less a nominal amount, will be applied to their costs of care. The patients receive no other notice that their funds deposited with the hospital accounting office are subject to deductions for the cost of hospitalization, nor are the patients notified when the deductions are actually made.
 
 
 4
 The Notice and Finding of Responsibility also states that, once the appeal period has expired, the hospital will obtain a superior court judgment for the amount of the debt, and invoke further enforcement proceedings, such as garnishment or attachment, if the debt is not paid. However, the parties stipulated that it was the practice of the hospitals to do neither. Rather, the hospitals' practice, once the Notice and Finding of Responsibility had been sent, was simply to deduct the funds from the patients' hospital accounts without notice.
 
 
 5
 Appellees filed suit in federal district court seeking declaratory and injunctive relief against the state's reimbursement procedures.[1] Appellees contended that the state's reimbursement law conflicts with 42 U.S.C. Sec. 407, which states that Social Security disability benefits shall not be subject "to execution, levy, attachment, garnishment, or other legal process."
 
 
 6
 The district court granted appellees' motion for summary judgment on their claims. The court held that section 407 barred the state from seeking reimbursement from appellees' OASDI funds, and that the state's practice of withdrawing funds from patients' accounts without notice deprived plaintiffs of their property without due process of law. The court issued declaratory and injunctive relief against the challenged practice.
 
 ANALYSIS
 
 7
 At issue is the meaning of the non-assignment provision of the Social Security Act. As amended in 1983, the Act provides as follows:
 
 Sec. 407. Assignment
 
 8
 (a) The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.
 
 
 9
 (b) No other provision of law, enacted before, on, or after the date of the enactment of this section, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.
 
 
 10
 42 U.S.C. Sec. 407 (Supp. I 1983).
 
 
 11
 The question before us is whether the statute preempts the collection and accounting procedures used by the State of Washington. The district court held that section 407 did preempt the state's procedures, reasoning that "the language of Sec. 407 is plain and unambiguous" in prohibiting the use of legal process to reach Social Security benefits. It further held that the state could not lawfully avoid section 407 by resort to confiscation without benefit of legal process, since such confiscation was a blatant denial of due process of law. We review the district court's conclusions de novo as they present pure questions of law. See San Bernardino Physicians' Services Medical Group, Inc. v. County of San Bernardino, 825 F.2d 1404, 1407 (9th Cir.1987).
 
 
 12
 The Supreme Court's decision in Bennett v. Arkansas, 485 U.S. 395, 108 S.Ct. 1204, 1205-06, 99 L.Ed.2d 455 (1988), decided after this appeal was taken, controls the question whether section 407 preempts the Washington collection procedures. Appellants conceded as much at oral argument. In Bennett, the Court ruled that section 407 barred a state from collecting reimbursement for prisoner maintenance costs by attaching the Social Security benefits of inmates of the state prisons. The Arkansas Supreme Court had held that there was no conflict between section 407 and the state reimbursement procedures because "the federal statutes contained an implied exception to the exemption from legal process when the state provides for the care and maintenance of a beneficiary of Social Security or veterans funds." Id. 108 S.Ct. at 1205 (quoting Bennett v. State, 290 Ark. 47, 49, 716 S.W.2d 755, 756 (1986)). The Supreme Court rejected this argument, holding that section 407(a) "unambiguously ruled out any attempt to attach Social Security benefits." Id. The court noted that "the express language of section 407 and the clear intent of Congress [was] that Social Security benefits not be attachable." Id. 108 S.Ct. at 1206.
 
 
 13
 The district court therefore correctly held that the Washington reimbursement procedures are preempted by section 407.
 
 
 14
 Appellants argue on appeal that, if we agree with the district court that the collection procedures are unlawful, we should nevertheless reverse that portion of the district court's injunctive order which enjoined the defendants from counting OASDI benefits as income for purposes of determining liability to the state. Appellants rely upon court decisions upholding Social Security regulations that in a different context require reporting of OASDI benefits. See Gorrie v. Bowen, 809 F.2d 508, 517 (8th Cir.1987) (regulation requiring applicants for Aid to Families with Dependent Children (AFDC) to report Social Security benefits paid to dependent children as family income does not violate section 407(a)); accord Bradley v. Austin, 841 F.2d 1288, 1294 (6th Cir.1988); Stroop v. Bowen, 870 F.2d 969 (4th Cir.1989). See also Creaton v. Bowen, 826 F.2d 6 (9th Cir.1987).
 
 
 15
 In this case, the injunction against defendants' "counting" OASDI benefits formed an integral part of the total package of injunctive relief requested by the plaintiffs and approved by the magistrate and the district court. That relief was as follows:
 
 
 16
 Enjoin the defendants and their successor from seizing the plaintiffs' Social Security funds;
 
 
 17
 Enjoin the defendants and their successors from counting the plaintiff's Social Security funds as an available asset in computing their liability to the state;
 
 
 18
 Order the defendants and their successors to provide the plaintiffs with debtor protections that are available against either private creditors or against the state for other debts;
 
 
 19
 Order the defendants to provide adequate notice to the plaintiffs of the defendants' seizure of their funds, adequate notice of any exemptions that might apply, and adequate opportunity to exercise those exemptions, and adequate notice of how to exercise those exemptions;
 
 
 20
 Enjoin the defendants from encouraging or inducing the plaintiffs to deposit their money in hospital patient accounts or any other place where the money would be more susceptible to the defendants' collection.
 
 
 21
 The defendants did not raise any objection below, however, to the form of injunctive relief or to any particular part of the injunction. Rather they resisted, successfully, any award of damages. The magistrate observed in his order regarding relief, following the decision in favor of plaintiffs on the merits, that "the defendants have not expressly suggested that any of the above injunctive relief is inappropriate; they have confined their objections to the issue of repayment of funds."
 
 
 22
 In this appeal, the defendants are, in effect, now asking us to reverse one integral part of an injunction designed to put an end to a system which evaded the proscriptions of section 407, denied due process, and resulted in the unlawful confiscation of OASDI funds. The issue of "counting" OASDI funds for any other purpose, such as determining the ability of the patients to pay, was never before the district court. We need not determine whether benefits might lawfully be taken into account under different procedures which defendants may, in the future, devise to obtain reimbursement from the plaintiff class.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 The appellees also sought damages for funds seized by the state in the past. The court below ruled that such retroactive monetary relief against the state was barred by the Eleventh Amendment. The issue is not raised on appeal