[No. 67680-1. En Banc.]
Argued November 8, 2000. Decided October 11, 2001.

GUARDIANSHIP ESTATE OF DANNY KEFFELER, ET AL.,
*Respondents*, v. THE DEPARTMENT OF SOCIAL AND HEALTH
SERVICES, ET AL., *Appellants*.

BRIDGE and IRELAND, JJ., and GUY, J. Pro Tem., dissent in part by separate opinion; CHAMBERS and OWENS, JJ., did not participate in the disposition of this case.

*Christine O. Gregoire, Attorney General,* and *Debra E. Casparian, L. Scott Lockwood,* and *William B. Collins, Assistants,* for appellants.

*Rodney Reinbold* (of *Mansfield, Reinbold & Gardner*) and *Richard B. Price,* for respondents.

*Eugene A. Studer;* and *Deborah R. Kant, William Kanter,* and *Colette G. Matzzie, of the United States Department of Justice,* on behalf of the Commissioner of the Social Security Administration, amicus curiae.

SANDERS, J. — The plaintiff class asks us to hold the Washington State Department of Social and Health Services (DSHS) violated that provision of the Social Security Act (the Act), 42 U.S.C. § 407(a) which forbids creditor access to Social Security benefits. Here DSHS acts as a representative payee under 42 U.S.C. § 405(j) for foster children and then applies the Social Security benefits to reimburse the state budget for payments made to foster parents for the basic needs of those children. We are also asked if DSHS's actions deprived the foster children of their property absent due process and abridged their right to equal protection of the laws. Lastly the plaintiff class asserts entitlement to an award of reasonable attorney fees.

We hold DSHS as a representative payee violates § 407(a) of the Act when it applies Social Security benefits to the current maintenance needs of foster children for whom it acts as representative payee. Given this disposition we find it unnecessary to consider the due process and equal protection claims. We remand for further proceedings, including further consideration of the reasonable attorney fee award.

## ISSUES

1. Does DSHS violate § 407(a) of the Social Security Act when, as a representative payee under § 405(j) of the Act, it uses Social Security benefits to pay current maintenance costs of children in foster care?

2. Is the class entitled to an award of reasonable attorney fees?

## FACTS

Foster care in Washington is provided by an amalgam of

federal, state, and private funds, although the program is largely state-funded. In fiscal year 2000, for example, the total foster care budget was $37.4 million in state funds, plus approximately $12.9 million in federal funds. To be eligible for federal funding under the Social Security Act, a state must provide foster care services under a plan approved by the Secretary of Health and Human Services. 42 U.S.C. § 670.[1] RCW 74.13.031[2] authorizes DSHS to provide foster care services to children in Washington.

Foster care is generally provided in Washington to children who have been abused or neglected or have become the responsibility of the state through our juvenile justice laws, Title 13 RCW.[3] On behalf of these children, the state pays a schedule of monthly allotments to foster parents who in turn pay for the basic necessities such as food, shelter, and

---

[1] The Act authorizes federal assistance for state foster care services:

For the purpose of enabling each State to provide, in appropriate cases, foster care and transitional independent living programs for children who otherwise would be eligible for assistance under the State's plan approved under part A of this subchapter [as such plan was in effect on June 1, 1995] and adoption assistance for children with special needs, there are authorized to be appropriated for each fiscal year (commencing with the fiscal year which begins October 1, 1980) such sums as may be necessary to carry out the provisions of this part. The sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary, State plans under this part.

42 U.S.C. § 670.

[2] RCW 74.13.031 provides, in pertinent part:

The department shall have the duty to provide child welfare services and shall:

(1) Develop, administer, supervise, and monitor a coordinated and comprehensive plan that establishes, aids, and strengthens services for the protection and care of runaway, dependent, or neglected children.

(2) Within available resources, recruit an adequate number of prospective adoptive and foster homes, both regular and specialized, i.e. homes for children of ethnic minority, including Indian homes for Indian children, sibling groups, handicapped and emotionally disturbed, teens, pregnant and parenting teens, and annually report to the governor and the legislature concerning the department's success in: (a) Meeting the need for adoptive and foster home placements; (b) reducing the foster parent turnover rate; (c) completing home studies for legally free children; and (d) implementing and operating the passport program required by RCW 74.13.285.

[3] See, e.g., RCW 13.34.210 (if a child has no parent with parental rights, court may commit child to DSHS's custody; DSHS in turn may seek adoption for child or place the child in foster care or other suitable placement).

clothing for the children in their charge. As of September 1999, there were 10,578 foster children under DSHS's supervision. An additional 2,352 children were in the custody of tribal authorities or child care agencies for whom DSHS paid support. Five hundred sixty-seven additional children received support through DSHS's Division of Developmental Disabilities (DDD).

Although DSHS provides foster care for children who need it, it is Washington public policy to attempt to recover the costs of foster care from the parents of children in foster care who are primarily liable for the costs of that care:

> It is declared to be the public policy of this state that this chapter be construed and administered to the end that children shall be maintained from the resources of responsible parents, thereby relieving, at least in part, the burden presently borne by the general citizenry through welfare programs.

RCW 74.20A.010 (support of dependent children act). *See also In re Welfare of Feldman*, 94 Wn.2d 244, 250, 615 P.2d 1290 (1980) ("It is true that parents bear the primary responsibility for the support of their children.").

In the context of foster care, DSHS implemented the Legislature's cost recovery policy by regulation:

> Parents of children in foster care paid by the department satisfy their legal obligation to support their children when there is a superior court order for support by paying the amounts specified in the order or in the absence of a superior court order, by paying the amount determined under RCW 74.20A.055 and regulations promulgated in chapter 388-11 WAC.

Former WAC 388-70-075(1) (1976), *repealed by* St. Reg. 01-08-047 (Apr. 30, 2001).

If parents of a foster child are unavailable or unwilling to reimburse DSHS for the costs of foster care, DSHS may reimburse itself using "moneys and other funds" that come into its possession while the child is in its custody. RCW 74.13.060 provides, in pertinent part:

The secretary [of the Department] or his designees or delegatees shall be the custodian without compensation of such moneys and other funds of any person which may come into the possession of the secretary during the period such person is placed with the department of social and health services pursuant to chapter 74.13 RCW. As such custodian, the secretary shall have authority to disburse moneys from the person's funds for the following purposes only and subject to the following limitations:

(1) The secretary may disburse any of the funds belonging to such person for such personal needs of such person as the secretary may deem proper and necessary.

(2) The secretary may apply such funds against the amount of public assistance otherwise payable to such person. This includes applying, as reimbursement, any benefits, payments, funds, or accrual paid to or on behalf of said person from any source against the amount of public assistance expended on behalf of said person during the period for which the benefits, payments, funds or accruals were paid.

DSHS implemented RCW 74.13.060 with the following regulation:

(1) If a child in foster care is entitled to financial benefits the income received shall be used on behalf of the child to help pay for the cost of the foster care received, except for resources held in trust for an American Indian child according to provisions in WAC 388-28-650.

(a) Income includes SSI [Supplemental Security Income], RSDI [retirement survivors disability insurance], veteran's benefits, railroad retirement benefits, inheritances, or any other payments for which the child is eligible, unless specifically exempted by the terms and conditions of the receipt of the income.

(b) Receipt of other income as described above shall not relieve the child's responsible parent(s) of the liability for payment of child support in accordance with WAC 388-70-075 through 388-70-084.

(2) Any person, agency, or court which receives any payments on behalf of a child in foster care shall remit such payments to the office of support enforcement, in accordance with WAC 388-70-082.

(3) Resources in the control of a child in foster care shall be treated in accordance with WAC 388-28-400 through 388-28-455.

Former WAC 388-70-069 (1983), *repealed by* St. Reg. 01-08-047 (Apr. 30, 2001).

Where a child is eligible for Social Security benefits,[4] federal law provides a process by which a "representative payee" may be appointed to administer the funds on behalf of the child. Section 405(j)[5] of the Act authorizes the Social Security Administration (Administration or SSA) to appoint such a "representative payee" for the child beneficiary:

> If the [Administration] determines that the interest of any individual under this subchapter would be served thereby, certification of payment of such individual's benefit under this subchapter may be made, regardless of the legal competency or incompetency of the individual, either for direct payment to the individual, or for his or her use and benefit, to another individual, or an organization, with respect to whom [certain] requirements . . . have been met (hereinafter in this subsection referred to as the individual's "representative payee").

42 U.S.C. § 405(j)(1)(A); *see also* 20 C.F.R. §§ 404.2001(b), 416.601(b). Generally, a representative payee is appointed whenever a beneficiary is under 18 years of age. The Administration has an order of preference for representative payees for such children, generally favoring the appointment of parents or relatives of the child; it will appoint an authorized agency only if no parent or guardian is available. The appointment of a state agency like DSHS is the last on that priority list.[6] 42 U.S.C. §§ 405(j)(3)(B),

---

[4] Children are eligible to receive either Title II Social Security Administration (SSA) benefits (based on the death or disability of a parent), or Title XVI Supplemental Security Income (SSI) benefits (based on the child's own disability), or both.

[5] Section 405(j) authorizes the appointment of a representative payee to receive SSA benefits under Title II. The appointment of a representative payee to receive SSI benefits under Title XVI is also authorized. 42 U.S.C. § 1383(a)(2)(A)(ii).

[6] The Act prohibits the appointment of a creditor as representative payee except, inter alia, where the creditor is a relative or legal guardian of the

405(j)(2)(C)(iii)(III); 42 U.S.C. § 1383(a)(2)(B); 20 C.F.R. §§ 404.2021, 416.621.

The Code of Federal Regulations explains the function of representative payees:

> A representative payee may be either a person or an organization selected by us [the Social Security Administration] to receive benefits on behalf of a beneficiary. A representative payee will be selected if we believe that the interest of a beneficiary will be served by representative payment rather than direct payment of benefits. Generally, we appoint a representative payee if we have determined that the beneficiary is not able to manage or direct the management of benefit payments in his or her interest.

20 C.F.R. § 404.2001(a).

The appointment of a representative payee such as DSHS may be challenged. The Administration must notify the beneficiary or legal guardian of the appointment of a representative payee and must advise that the beneficiary has the right to a hearing before the Commissioner and judicial review to challenge any appointment. 42 U.S.C. § 405(j)(2)(E)(i), (ii); 42 U.S.C. § 1383(a)(2)(B)(xi), (xii).

█ Representative payees, including state agencies, must use Social Security benefits for the beneficiary, and in the beneficiary's best interest, under guidelines set forth in the Administration's regulations. 20 C.F.R. §§ 404.2035(a), 416.635(a). The regulations specifically authorize representative payees to use benefits to defray the cost of the beneficiary's "current maintenance," including food, shelter, clothing, medical care, and personal items. The regulations state, in relevant part:

> We will consider that payments we certify to a representative payee have been used for the use and benefit of the beneficiary if they are used for the beneficiary's current maintenance. Current maintenance includes cost incurred in obtaining food, shelter, clothing, medical care, and personal comfort items.

---

beneficiary, or the creditor is a licensed state facility. 42 U.S.C. § 405-(j)(2)(C)(i)(III); 42 U.S.C. § 1383(a)(2)(B)(iii).

20 C.F.R. §§ 404.2040(a)(1), 416.640(a). The regulations also specify that the cost of institutionalized care is an authorized expense. 20 C.F.R. §§ 404.2040(b), 416.640(b).

When monthly SSA and/or SSI benefits exceed the amount needed for current maintenance, the representative payee is required to conserve and invest the remaining benefits in trust for the benefit of the beneficiary. 20 C.F.R. §§ 404.2045(a), (c), 416.645(a), (c). Large amounts of retroactive benefits must be placed in a separate, dedicated account and may be used only for certain, enumerated expenditures. 20 C.F.R. § 416.640(e).

If a representative payee misuses benefits, the representative payee may be removed by the Administration. 42 U.S.C. § 405(j)(1)(A); 42 U.S.C. § 1383(a)(2)(A)(iii). Moreover, a representative payee's misuse of the beneficiary's funds is a felony. 42 U.S.C. § 408(a)(5). Given the criminal penalty for misuse of funds, some courts have inferred a fiduciary relationship between beneficiary and representative payee, although the statute and implementing regulations do not say as much. *See, e.g., Garvey v. Worcester Hous. Auth.*, 629 F.2d 691 (1st Cir. 1980), *cert. denied*, 450 U.S. 925 (1981); *Bradley v. Austin*, 841 F.2d 1288 (6th Cir. 1988); *C.G.A. v. State*, 824 P.2d 1364 (Alaska 1992); *In re Estate of Merritt*, 272 Ill. App. 3d 1017, 651 N.E.2d 680 (1995); *Rice v. Perales*, 156 Misc. 2d 631, 594 N.Y.S.2d 962 (Sup. Ct.), *aff'd*, 193 A.D.2d 1135, 599 N.Y.S.2d 211 (1993).

In September 1999, of the thousands of foster children in the custody of DSHS pursuant to Title 13 and chapter 74.13 RCW, 1,480 foster care children were receiving Social Security benefits. Nine hundred twenty-three children were receiving SSI benefits, 469 were receiving SSA benefits, and 88 children were receiving both. DSHS acted as a representative payee for 1,411 children in foster care and in DDD.

Two units within DSHS perform the actual function of representative payee for the Social Security benefits of class members. The Children's Administration (Children's) provides services to all foster children regardless of whether

the children also receive Social Security benefits. These services include monitoring the child's needs, determining special needs, and developing an individual service plan for each child. The Trust Fund Unit accounts for Social Security benefits received by DSHS as representative payee.

When a child is placed in foster care, Children's identifies those children who may be eligible for Social Security benefits and makes an application on their behalf. If Children's believes a denial of benefits is erroneous, Children's will appeal for the child. In each case, DSHS also applies to the Administration to become the representative payee for the child (except for developmentally disabled children).

When DSHS receives Social Security benefits as representative payee for a foster child the funds are deposited in a Foster Care Trust Fund Account at the Office of the State Treasurer. Although the funds are in a single account, the Trust Fund Unit maintains an individual "subsidiary account" for each child for whom benefits are received.[7]

Children's is responsible for providing the current maintenance needed by a child in foster care. However, Children's does not normally purchase a child's food, shelter, clothing, and other items directly. Rather, such items are purchased and provided by the child's foster parent. Children's pays the foster parent a fixed amount based on a schedule. Where a special item or expenditure is needed, the Trust Fund Unit will issue a check to either the foster parent or directly to a store or service provider. Such expenditures are authorized by DSHS in its discretion as the representative payee.

The Trust Fund Unit typically uses a child's Social Security benefits to pay for a child's basic foster care expenses. Every month, Children's generates a report

---

[7] The only exception to this practice occurs when DSHS receives a lump sum payment of SSI benefits of over six times the monthly benefit amount. Since October 1996, these lump sum payments have been deposited by the Administration directly into a dedicated account at a local bank. These funds cannot be used for basic foster care expenses, and can be expended only for special needs, primarily related to a child's impairment. Prior to October 1996, these funds were used to reimburse Children's for past foster care expenses.

showing the amount of money paid by Children's to a care provider for each child in foster care. The Trust Fund Unit uses this report to determine how much of a child's SSI and SSA funds it will direct the state treasurer to pay to Children's. In general, if the amount in the trust fund account is adequate to reimburse the entire cost of foster care, as claimed by Children's, the entire claimed amount is paid. If the funds in the trust fund account are not adequate to reimburse the entire cost of foster care, the Trust Fund Unit uses up to the amount available in the trust fund account. The amount to be paid for foster care is transferred from the Foster Care Trust Fund Account to Children's.

As representative payee, DSHS has the discretion to expend a child's SSA or SSI funds on items other than current basic foster care expenses. Children's staff may request that a child's benefits be used for extra items or special needs, such as computers, educational expenses, summer camps, counseling, toys, clothing, athletic equipment and orthodontics. When in doubt, the Trust Fund Unit consults with the Administration to determine whether a particular expenditure is authorized.

Children in foster care for whom a person or entity other than DSHS serves as representative payee still receive state-supported foster care. Foster children who do not receive any Social Security benefits are eligible for state funding for extra items and special needs if funds are available in the state foster care budget.

DSHS is also authorized to conserve and invest Social Security benefits for foster children. Funds not used for basic foster care or special needs are deposited into a single interest-bearing account. The interest earned on this account is credited to the child's individual subsidiary account. These funds are ultimately forwarded to a successor representative payee or paid directly to the child upon emancipation.

There is a $2,000 resource limit on any child receiving SSI benefits (although funds deposited to the dedicated account are not subject to this limit). DSHS monitors each

child's subsidiary account to ensure the balance remains below the limit. When a balance is approaching the resource limit, the Trust Fund Unit notifies Children's of the need to spend down the account balance. Children's determines what special needs might be met using the excess funds and requests disbursements from the Trust Fund Unit. DSHS uses reimbursements to Children's for current expenses as a means of not exceeding the $2,000 limit.[8]

 Federal law forbids creditor access to Social Security benefits. 42 U.S.C. § 407(a) provides:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

Commonly referred to as an antialienation provision, this statute evinces Congress's intent to remove Social Security benefits from the reach of creditors employing legal process. *Dionne v. Bouley*, 757 F.2d 1344, 1355 (1st Cir. 1985). The statute also prohibits the voluntary transfer or assignment of Social Security benefits by the beneficiary. *Gardner v. Ewing*, 88 F. Supp. 315 (S.D. Ohio), *aff'd*, 185 F.2d 781 (6th Cir. 1950), *rev'd on other grounds*, 341 U.S. 321, 71 S. Ct. 684, 95 L. Ed. 968 (1951); *accord Hurd v. Ill. Bell Tel. Co.*, 136 F. Supp. 125 (N.D. Ill. 1955), *aff'd*, 234 F.2d 942 (7th Cir.), *cert. denied*, 352 U.S. 918 (1956). As the United States Supreme Court noted in *Bennett v. Arkansas*, 485 U.S. 395, 397, 108 S. Ct. 1204, 99 L. Ed. 2d 455 (1988), any state law contrary to § 407(a) runs afoul of the Supremacy Clause. *Accord Crawford v. Gould*, 56 F.3d 1162, 1165 (9th Cir. 1995).

The present case arose from DSHS's treatment of class

---

[8] Prior to October 1996, some dedicated accounts as well as subsidiary accounts were spent down by reimbursing Children's for previous basic care expenditures. In addition, the practice of "account sweeping" sometimes results in DSHS's taking all of a child's Social Security funds and applying those funds to accumulated (past) reimbursable foster care expenses.

representative Danny Keffeler. Apparently, an overzealous Department employee sought to have Danny's grandmother and guardian removed as representative payee. DSHS now asserts this was the only time it has ever tried to remove a private representative payee. After four years of litigation involving just Danny, his guardian filed a class action lawsuit in the Okanogan County Superior Court on Danny's behalf and on behalf of others "similarly situated." Clerk's Papers (CP) at 1-15. According to the amended complaint, DSHS has now abandoned its efforts to become the representative payee for Danny.

The trial court certified the class, and later amended the certification to include children receiving both SSA and SSI benefits. The class now consists of "All foster children within the State of Washington, past, present, and future in foster care that receive [either SSA or SSI benefits] for whom the State of Washington acts or has sought to act as 'representative payee.'" CP at 574.[9]

The gravamen of the class action is that DSHS's actions violate the antialienation provision of 42 U.S.C. § 407(a) where DSHS, as representative payee, uses a foster child's Social Security benefits to reimburse the state for the costs of foster care. The class also presents several constitutional causes of action. First, the class alleges DSHS has acted irrationally, invidiously, and arbitrarily and capriciously in violation of 42 U.S.C. § 1983. Second, the class alleges DSHS's actions violate the due process clauses of the Washington Constitution and the Fourteenth Amendment. Third, the class alleges the state discriminates against the class members "by subjecting them to a lower standard of living than children who are not so situated." Finally, the class alleges the state "maliciously, recklessly and wantonly is invading federally protected funds for its own improper

---

[9] The actual number of class members cannot be determined from records available to DSHS. Based on available records there are 7,798 class members dating back to July of 1991. According to the trial court, "the claims of the class extend back 18 years plus one year for a total of 19 years back from the filing of the plaintiffs' action, i.e. to 1979." Court's Findings of Fact on Order of Remand from Supreme Court at 18.

advantage, to the detriment of Plaintiff and all other foster children's financial and emotional well-being." CP at 13-14.

In its prayer for relief, the class seeks (i) a permanent injunction enjoining DSHS from using Social Security payments to offset the cost of foster care; (ii) reimbursement to class members of all Social Security payments used by DSHS for reimbursement; and (iii) an award of attorney's fees.

DSHS moved to dismiss the action, arguing the Administration was an indispensable party that cannot be sued in state court. In response, the class argued it was not claiming the Administration has done anything wrongful, only that DSHS is unlawfully taking Social Security benefits from the class members in violation of federal law. The trial court denied the motion, without analysis, in certifying the class.

On cross motions for summary judgment, the trial court filed a memorandum opinion and entered judgment in favor of the class. The trial court held DSHS's use of Social Security benefits to reimburse the cost of foster care violates 42 U.S.C. § 407(a), and DSHS violates procedural due process by failing to provide notice, beyond that required by federal law and regulation, of the "intended result" of the appointment of DSHS as representative payee. The trial court did not address the class' remaining constitutional arguments, nor did it specifically conclude DSHS was liable for civil rights violations under 42 U.S.C. § 1983.

The trial court's judgment provided the following relief:

1. An injunction preventing DSHS from taking action to replace any private representative payee.

2. An injunction preventing DSHS from requiring any private representative payee to repay DSHS for the cost of maintaining a child in foster care from Social Security benefit payments.

3. An injunction requiring DSHS to provide written notice containing certain information to a child's parent(s) or legal

guardian whenever DSHS applies to become a representative payee for the child.

4. An injunction preventing DSHS from using Social Security payments to reimburse the costs of foster care.

5. An order requiring DSHS to produce an accounting of Social Security fund disbursements for all children that had been in the custody of DSHS for the purpose of receiving foster care.

6. An order of restitution of Social Security funds used to reimburse DSHS for foster care expenses.

7. An award of attorney's fees, with the amount to be determined in the future.

DSHS appealed the trial court's judgment to Division Three of the Court of Appeals, although no error was assigned to items 1 or 2 referenced above. Because of the importance of the issues in this case, the Court of Appeals certified the case to us and we granted the certification. After the first oral argument of the case, we remanded the matter to the trial court pursuant to RAP 9.11. The parties have supplemented the record and the trial court has made findings of fact.

## ANALYSIS

A. DSHS's actions as representative payee violated 42 U.S.C. § 407(a).

Simply put, if DSHS is appointed representative payee for a foster child it will confiscate the child's SSI money to benefit the state. However, if *anyone else* is appointed, the state will bear the cost of foster care, and the child's SSI will be available to benefit the child in addition to the state-funded foster care program. The issue is whether this confiscation violates federal law. For the reasons which follow we believe it does.

DSHS admits it would probably not even apply to be a representative payee if it could not rely on the child's SSI benefits to reimburse the cost of care. By the same token, DSHS admittedly cannot actively seek reimbursement from

benefits paid to *private* representative payees because Congress specifically protects Social Security benefits from transfer, assignment, execution, levy, attachment, garnishment, or other legal process under 42 U.S.C. § 407(a).[10] Thus, DSHS receives reimbursement for foster care only if it serves as a representative payee, and it only serves as representative payee so it can confiscate the child's money.[11]

This scheme stands in stark contrast to 20 C.F.R. § 404.2021 which expressly provides, "Our primary concern is to select the payee who will best serve the *beneficiary's* interest." (Emphasis added.) Obviously the child is better off with any payee other than the state because DSHS must provide foster care under state law *regardless* of whether it receives a reimbursement.[12] DSHS's self-prioritization is extremely disquieting in the face of a regulatory mandate that we consider these disenfranchised children before enriching government coffers.

*DSHS as a creditor*

█ Whether DSHS acts as a *creditor* when it reimburses itself for foster care costs out of the foster children's Social Security Administration (SSA) entitlements is the crucial question. If DSHS's reimbursement scheme is that of a creditor, the antiattachment provisions of § 407(a) apply

---

[10] The federal code provides, in pertinent part,

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a). This section was made applicable to Title XVI benefits by 42 U.S.C. § 1383(d)(1).

[11] The trial court found "*[f]or the sole purpose of obtaining reimbursement for foster care costs*, DSHS applies to the Social Security Administration to be appointed representative payee for all children in foster care who are eligible for social security benefits." Clerk's Papers (CP) at 623 (Trial Court's Mem. Op. (Sept. 29, 1998) at 3) (emphasis added).

[12] DSHS forecasted it would receive $6.733 million from such reimbursement, or fully 18 percent of the state's contribution to the foster care budget of $37 million, for fiscal year 2000. CP at 1899, 1911 (Trial Court's Findings of Fact on Order of Remand, Exs. B, F).

and DSHS's cost recovery policy runs afoul of a federal statute which preempts state law under the Supremacy Clause of the United States Constitution. U.S. CONST. art. VI, cl. 2.

The facial logic of DSHS's reimbursement scheme demonstrates a creditor relationship, a relationship involving creditor-type acts, vis-à-vis foster children and their SSA benefits. Further, while no federal case addresses the peculiar set of facts involved here, the course of federal precedent in similar situations arising under § 407(a) undercuts the claim that DSHS complies with federal law.

In *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 93 S. Ct. 590, 34 L. Ed. 2d 608 (1973), the United States Supreme Court described the broad protection § 407 affords Social Security benefits. *Philpott* declared that § 407 barred New Jersey's attempt to reach federal Social Security disability benefits in order to reimburse the state for public assistance expenditures made on behalf of the petitioners. State welfare recipients were made to execute an agreement, as a condition precedent to receiving welfare benefits, to reimburse the county welfare board with any funds that came into their possession. When Philpott refused to turn his SSA disability benefits over to the welfare board the latter sued to enforce the agreement. The Supreme Court held § 407 on its face prohibited New Jersey from reaching the petitioner's federal disability payments, explaining, "We see no reason why a State, performing its statutory duty to take care of the needy, should be in a preferred position as compared with any other creditor." *Philpott*, 409 U.S. at 416.

Responding to the argument New Jersey may not be a creditor with respect to the SSA benefits, the Court continued: "§ 407 does not refer to any 'claim of creditors'; it imposes a broad bar against the use of any legal process to reach all social security benefits. That is broad enough to include all claimants, including a State." 409 U.S. at 417. This language evinces a federal policy with respect to SSA benefits—the "broad bar"—which controls this case.

The Supreme Court again took up § 407(a) in *Bennett v. Arkansas*, 485 U.S. 395, 108 S. Ct. 1204, 99 L. Ed. 2d 455 (1988), where Arkansas attempted to attach certain federal benefits paid to individuals incarcerated in Arkansas prisons to reimburse the state for maintaining a prison system. Arkansas argued an "implied exception" to the broad bar of § 407(a) (as here) where the state is providing public money for the care and maintenance of the SSA beneficiary. The Court found no such "care and maintenance" exception for states "given the express language of § 407(a) and the clear intent of Congress that Social Security benefits not be attachable." *Bennett*, 485 U.S. at 397-98. DSHS in the instant case attempts to evade § 407(a) by arguing that it simply provides the "care and maintenance" intended by the SSA. We find that argument as unavailing, notwithstanding some factual dissimilarities, as did the Supreme Court.

Closer to home, the Ninth Circuit ruled in *Brinkman v. Rahm*, 878 F.2d 263 (9th Cir. 1989) DSHS may not deduct SSA benefits as reimbursement for the costs of care and maintenance, paid out of public funds, for involuntarily committed mental health patients in state hospitals. The court noted, "The state collects this debt from the appellees by withdrawing [Old Age Survivor's and Disability Insurance] funds from appellees' accounts at the state hospital accounting offices," finding § 407 preempts this procedure. *Brinkman*, 878 F.2d at 264. There is not a significant enough difference between DSHS's methods in *Brinkman* and its methods of reaching the foster children's SSA benefits in this case[13] to justify a different result.

---

[13] DSHS's actual practice, as described by its Office Chief for the Office of Federal Funding in the Division of Program and Policy for the Children's Administration, is:

to apply to the Social Security Administration (SSA) to be the Representative Payee for social security monies whenever a child is placed in foster care. If SSA chooses to make DCFS [Division of Children and Family Services] the Representative Payee, the actual checks are sent to the Department's Office of Financial Recovery and the money is then *transferred to a suspense account* in the Department's Office of Accounting Services. *This money is used to reimburse the Department* for monthly foster care expenses, including food, clothing,

The Ninth Circuit again addressed the issue in *Crawford v. Gould*, 56 F.3d 1162 (9th Cir. 1995) where, under California law, patients committed to state psychiatric hospitals were held responsible for the costs of their own incarceration. California accordingly required all funds and income, including SSA benefits, to which the patient was entitled to be placed in a hospital trust account from which the state could deduct as reimbursement the costs of care and maintenance expended on the patient. The state deducted the money whether or not the patient authorized the deduction. Holding § 407 preempted this procedure, the Ninth Circuit held:

> Our conclusion, that "other legal process" includes the procedure that California uses to deduct Social Security benefits, is consistent with the purpose of § 407. The nonassignment provision was not designed to preclude use of only the judicial process to obtain Social Security benefits. Rather, § 407(a) is designed "to protect social security beneficiaries and their dependents from the claims of creditors." The cramped reading of § 407 California urges would enable the state to obtain Social Security benefits through procedures that afford less protection than judicial process affords.

*Crawford*, 56 F.3d at 1166 (citations omitted).

■ These cases evince an expansive interpretation of the protections of § 407. The thrust of the case law is that Social Security benefits are, for all intents and purposes, beyond the reach of the state, however clever or subtle its attempt to seize them. *Philpott* and the cases in its line, including *Crawford*, are on point and persuasive.

The state claims *King v. Schafer*, 940 F.2d 1182 (8th Cir. 1991) justifies DSHS's position, particularly because DSHS acts as a representative payee under 42 U.S.C. § 405(j) for the foster children in this case. In *King* the State of Missouri, as representative payee, received SSA benefits

shelter and other personal or medical expenses as governed by the Code of Federal Regulations. Excess money is placed in trust accounts which bear interest and the interest is reported to SSA.

CP at 120 (Aff. of Richard Anderson) (emphasis added).

due involuntarily committed mental patients and reimbursed itself for the care and maintenance costs expended out of public funds for the patients. The patients argued the state's application to become the patient's representative payee to accept the patients' SSA benefits violated the "other legal process" provision of § 407(a). However the *King* court disagreed, noting the illogic of presuming § 407(a) would outlaw a procedure (applying to become representative payee) expressly authorized by § 405(j). "We cannot agree with the plaintiffs," wrote the *King* court, "that the Department's participation in the administrative proceeding to become a representative payee is the kind of coercive legal process envisioned by § 407(a)." *King*, 940 F.2d at 1185.

In light of *King*, and the fact that DSHS enjoys the status of representative payee (for most) of the foster children under § 405(j) and 20 C.F.R. § 404.2001(a), the significance of the state's representative payee status requires further discussion.[14]

The *King* plaintiffs challenged the state's procedure for applying to become representative payee, arguing that *procedure* (incident to which the state seized the mental health patient's SSA benefits) violated § 407(a) as "other legal process." However here it is not DSHS's procedure to apply to become the foster children's representative payee that is under attack; rather it is DSHS's practice of reimbursing itself from the foster children's SSA benefits once it *becomes* representative payee.

█ The difference is subtle, but the distinction is crucial. There is nothing ipso facto wrong with DSHS applying to

---

[14] Apparently DSHS is not the representative payee for Danny Keffeler, the class representative. Keffeler's grandmother apparently remained his representative payee, despite DSHS's zealous efforts to remove her. Br. of Appellants at 1-4. This fact is of some interest in light of *King*, because the *King* court found that with respect to those mental health patients for whom the state was *not* the representative payee, the state's attempts to reach the SSA benefits *did* constitute "other legal process" and was preempted by § 407(a). *King v. Schafer*, 940 F.2d 1182, 1185 (8th Cir. 1991). We doubt the *King* court's distinction is internally consistent but refrain from entertaining those doubts, as it does not further the analysis on this point.

become the representative payee for certain foster children, as § 405(j) and the SSA's accompanying regulations explicitly contemplate. We may even agree the representative payee application is not "other legal process." But it is equally clear the reimbursement process *is* "other legal process," given the definition of that phrase furnished by *Philpott, Brinkman, Bennett,* and *Crawford.* Accordingly, *King* must be distinguished, as Judge Burchard below correctly concluded, "[T]here is no legal basis for giving foster children less protection for their social security benefits than adult welfare recipients, state prisoners or involuntarily committed mental patients receive." CP at 627 (Trial Court's Mem. Op. (Sept. 29, 1998) at 7).

The state also claims *C.G.A. v. State,* 824 P.2d 1364 (Alaska 1992) supports its position. But *C.G.A.* said only the state may apply to become a representative payee. *C.G.A.,* 824 P.2d at 1366. The court *did not hold* the state could reimburse itself but deferred that determination to the Social Security agency under the doctrine of primary jurisdiction. *Id.* at 1370. Like *King, C.G.A.* stands for no more than the uncontested proposition DSHS may apply to become a representative payee.

■ DSHS reimbursement is barred by § 407(a) because despite DSHS's status as representative payee it performs the role of creditor when it takes the foster child's SSA entitlement to reimburse itself for moneys spent on the child. A representative payee may not be a "creditor of such individual who provides such individual with goods and services for consideration." 42 U.S.C. § 405(j)(2)(C)(i)(III).

However to claim DSHS does not provide goods and services for consideration is only to say that DSHS is not the kind of creditor which § 405(j) excludes from representative payee status. It is not to say the definition of a creditor "who provides such individual with goods and services for consideration," *id.,* is an exhaustive definition of other creditors who do not, nor is it to say DSHS cannot become a creditor or act like a creditor despite the fact it is a representative payee. If DSHS is allowed under § 405(j) to

become a representative payee for the foster children, that fact does not establish the legality of taking the child's money.

Furthermore, the bare logic of reimbursement also implies a creditor-debtor relationship. Common sense and dictionary definition of "reimburse" is "[t]o pay back, to make restoration, to repay that expended; to indemnify, or make whole." BLACK'S LAW DICTIONARY 1287 (6th ed. 1990). In common parlance one need not make a payback unless something "loaned" was "owed" by the recipient back to the payee. In fact the public policy of our state to recover the costs expended from public funds on foster children implies exactly this sort of debtor-creditor relationship.[15] As DSHS presently conceptualizes the matter, RCW 74.13.060 (and its implementing regulation, former WAC 388-70-069 (1983))[16]

---

[15] That policy finds its statutory expression in RCW 74.13.060:

The secretary [of DSHS] or his designees or delegatees shall be the custodian without compensation of such moneys and other funds of any person which may come into the possession of the secretary during the period such person is placed with the department of social and health services pursuant to chapter 74.13 RCW. As such custodian, the secretary shall have authority to disburse moneys from the person's funds for the following purposes only and subject to the following limitations:

(1) The secretary may disburse any of the funds belonging to such person for such personal needs of such person as the secretary may deem proper and necessary.

(2) The secretary may apply such funds against the amount of public assistance otherwise payable to such person. This includes applying, as reimbursement, any benefits, payments, funds, or accrual paid to or on behalf of said person from any source against the amount of public assistance expended on behalf of said person during the period for which the benefits, payments, funds or accruals were paid.

[16] The code states, in pertinent part, that:

(1) If a child in foster care is entitled to financial benefits the income received shall be used on behalf of the child to help pay for the cost of the foster care received . . . .

(a) Income includes SSI, RSDI, veteran's benefits, railroad retirement benefits, inheritances, or any other payments for which the child is eligible, unless specifically exempted by the terms and conditions of the receipt of the income. . . .

. . . .

(2) Any person, agency, or court which receives any payments on behalf of a child in foster care shall remit such payments to the office of support enforcement, in accordance with WAC 388-70-082.

Former WAC 388-70-069(1)(a), (2) (1983).

requires it to reimburse itself for the public assistance it has meted out to foster children from money, including SSA entitlements, that come into the children's possession. If the Legislature and DSHS did not hold the costs of foster care were somehow "owed" back to the taxpayers, it would not claim the right of DSHS to "reimburse" itself on the taxpayer's behalf.

DSHS's representative payee status further undercuts the legality of its reimbursement process because a representative payee is charged under SSA regulation, 20 C.F.R. § 404.2035, with the responsibility to "[u]se the payments he or she receives only for the use and benefit of the *beneficiary* in a manner and for the purposes he or she determines, under the guidelines in this subpart, to be in the best interests of the *beneficiary.*" *Id.* § 404.2035(a) (emphasis added). We seriously doubt using the SSA benefits to reimburse the state for its public assistance expenditure is in all cases, or even some, "in the best interests of the beneficiary."

Using this money for the care and maintenance of the beneficiary, as required under 20 C.F.R. § 404.2035(a), would indeed be in the best interest of the beneficiary, but that is significantly different from using the money to reimburse the state for payments it made for the care and maintenance of the foster child—especially when that payment to the state cannot be legally compelled and, moreover, could be used or conserved for other special needs of the child.

As the state concedes, DSHS takes on a fiduciary or quasi-fiduciary role when it acts as representative payee. Br. of Appellants at 3. DSHS's reimbursement procedure hence constitutes a conflict of interest precisely because DSHS uses the SSA benefits it receives as representative payee in a manner inconsistent with the best interests of the foster children entitled to the money. However worthy cost recovery might be, DSHS cannot violate federal law at

the expense of foster children to accomplish it.

Accordingly we hold each instance of reimbursement makes DSHS a creditor, or, if not a creditor, then at least committed to a creditor-type action that is preempted by the "broad bar" of § 407(a). DSHS's application under § 405(j) to become a foster child's representative payee is at best immaterial to the analysis pertaining to its use of SSA benefits as reimbursement, or is at worst incompatible with that use of the benefits, as discussed above. Given our view that the state's actions violate the Supremacy Clause we find it unnecessary to consider other alleged constitutional infirmities such as deprivation of property without due process or denial of the equal protection of the law. *See* U.S. CONST. amend. XIV.

B. The trial court award of attorney fees is not sufficiently specific.

■ The summary judgment which we review provided:

It is hereby ordered that plaintiff should be awarded attorney fees, the amount of which, and the theory under which awarded, shall abide future ruling of this court.

Pl.'s Order Granting Pl.'s Mot. for Summ. J., CP at 666. The quoted language does not clarify the scope or basis of the attorney fee award and therefore must be revisited on remand.

■ ■ Under the American Rule for attorney fees, compensation may be awarded only if authorized by contract, statute, or a recognized ground in equity. *Bowles v. Dep't of Ret. Sys.*, 121 Wn.2d 52, 70, 847 P.2d 440 (1993) (citing *Painting & Decorating Contractors of Am., Inc. v. Ellensburg Sch. Dist.*, 96 Wn.2d 806, 815, 638 P.2d 1220 (1982); *Seattle Sch. Dist. No. 1 v. State*, 90 Wn.2d 476, 540, 585 P.2d 71 (1978)). A well-established equitable ground for awarding attorney fees is the common fund doctrine. *See Covell v. City of Seattle*, 127 Wn.2d 874, 891, 905 P.2d 324 (1995); *Bowles*, 121 Wn.2d at 70; *Seattle Sch. Dist. No. 1*, 90 Wn.2d at 542-45. It applies when a litigant preserves or creates a common fund for the benefit of an ascertainable

category of persons. *Miotke v. City of Spokane*, 101 Wn.2d 307, 339, 678 P.2d 803 (1984) (quoting *Pub. Util. Dist. No. 1 v. Kottsick*, 86 Wn.2d 388, 390-91, 545 P.2d 1 (1976)). The doctrine serves important public functions, and, in light of the purpose of the American Rule for attorney fees, should be applied only when such functions are met. *Accord Covell*, 127 Wn.2d at 892 (awarding attorney fees based on the common fund doctrine because the policy reasons "clearly are supported"). If properly applied, it provides greater access to those who otherwise may be unable to afford the services of an attorney. *Bowles*, 121 Wn.2d at 71.

Although the common fund doctrine provides an avenue whereby attorneys may be reimbursed from the fund created, other equitable and/or statutory grounds may allow an affirmative recovery against the nonprevailing party. 42 U.S.C. § 1988, for example, may provide an arguable basis for such an award; however, neither the trial court nor the parties have adequately articulated the equitable or statutory basis to impose liability against the state for reasonable attorney fees and expenses of litigation in the context of this case. This issue therefore must be considered further on remand.

## CONCLUSION

We therefore hold DSHS violated § 407(a) of the Act when acting as the representative payee under § 405(j) of the Act by reimbursing itself for foster care payments, contrary to the Supremacy Clause of the United States Constitution. We therefore affirm the trial court's result, remanding for further appropriate proceedings consistent with this opinion. The class shall recover its statutory costs on appeal without prejudice to a further award of reasonable attorney fees to be determined on remand.

ALEXANDER, C.J., and SMITH, JOHNSON, and MADSEN, JJ., concur.

BRIDGE, J. (concurring in part/dissenting in part) — I agree with the majority that the Washington State Department of Social and Health Services (DSHS) impermissibly used social security funds to reimburse itself for *past due* foster care payments. However, the majority goes too far in concluding that *any* use of social security funds by DSHS violates the antiattachment rule. Under a fair reading of the controlling federal statute and regulatory authority, DSHS is entitled to use the funds to pay for *current* maintenance costs, provided that any special needs of the children are satisfied first.

The federal law governing the appointment of representative payees and the use to which funds received on behalf of beneficiaries can be put is 42 U.S.C. § 405(j). RCW 74.13.060 allows DSHS to become the custodian (i.e., representative payee) "without compensation" of social security funds[17] payable to foster children:

> The secretary or his designees or delegatees shall be the custodian without compensation of such moneys and other funds of any person which may come into the possession of the secretary during the period such person is placed with the department of social and health services pursuant to chapter 74.13 RCW.

Tracking federal law, state law provides that once DSHS becomes the custodian ("representative payee") of the funds, DSHS is permitted to spend these funds *only* for the child's "personal needs" or to reimburse the state for "the amount of public assistance otherwise payable to" the child during the period for which the benefits were paid. RCW 74.13.060(1), (2). Former WAC 388-70-069 (1983), *repealed by* St. Reg. 01-08-047 (Apr. 30, 2001), specifically allowed the social security funds to be used on behalf of the child to help defray the state's cost for foster care:

> (1) If a child in foster care is entitled to financial benefits the income received shall be used on behalf of the child to help pay for the cost of the foster care received, except for resources held

---

[17] Social Security (SSA) and Supplemental Security Income (SSI) benefits.

in trust for an American Indian child according to provisions in WAC 388-28-650.

(a) Income includes SSI, RSDI [retirement survivors disability insurance], veteran's benefits, railroad retirement benefits, inheritances, or any other payments for which the child is eligible, unless specifically exempted by the terms and conditions of the receipt of the income.

The majority concludes that "If DSHS's reimbursement scheme is that of a creditor, the antiattachment provisions of § 407(a) [of the Social Security Act] apply and DSHS's cost recovery policy runs afoul of a federal statute which preempts state law." Majority at 17-18. This statement is misleading in its scope. The Social Security Act, chapter 7, 42 U.S.C., does not rule out appointment of a creditor as representative payee in all situations. One of the exceptions to the antiattachment provisions of the act allows the appointment of "an individual who is determined by the Commissioner . . . to be acceptable to serve." 42 U.S.C. § 405(j)(2)(C)(iii)(V). Thus, even if DSHS is characterized as a creditor, the commissioner of social security may find, and here *has* found, DSHS acceptable to serve as a representative payee for these children in foster care.[18] The determination of the Social Security Act should control. The real issue, in my view, is the conflict of interest that arises when DSHS serves both as a representative payee and as a creditor for the *same* funds (which funds belong to the eligible child, the beneficiary) and the permissible uses of such funds.

Federal regulations not only govern the selection of a representative payee, but also define the lawful uses to which a representative payee may put the social security funds entrusted to its care. Specifically, a representative payee has a responsibility to "[u]se the payments he or she receives only for the use and benefit of the beneficiary in a manner and for the purposes he or she determines, under

[18] If the commissioner may find an individual acceptable to serve, he may presumably find an entity acceptable to serve. This interpretation is reinforced by the fact that the commissioner routinely appoints entities such as DSHS to serve as representative payees.

the guidelines in this subpart, to be in the best interests of the beneficiary." 20 C.F.R. § 416.635(a). *Current mainte-nance*, including the cost of food, shelter, clothing, medical care, and personal comfort items, is deemed to be for the use and benefit of the beneficiary. 20 C.F.R. § 416.640(a).

An example in the regulations clarifies the definition of "use and benefit" in the context of payments to an institu-tion for current maintenance of the beneficiary and indi-cates a clear intent that special needs of the beneficiary should take precedence over general maintenance or reim-bursement for care.[19] The example states that the repre-sentative payee should deduct the cost of special needs items from the amount paid to the institution, and also makes clear that any remaining money may be used for current maintenance.

The majority relies on four federal cases to assert that DSHS may not use social security funds for current main-tenance: *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 93 S. Ct. 590, 34 L. Ed. 2d 608 (1973) (holding that New Jersey may not attach social security benefits to reimburse itself for welfare benefits); *Bennett v. Arkansas*, 485 U.S. 395, 108 S. Ct. 1204, 99 L. Ed. 2d 455 (1988) (holding that Arkansas may not attach federal benefits for care and maintenance of prisoners); *Brinkman v. Rahm*, 878 F.2d 263 (9th Cir. 1989) (forbidding Washington State

---

[19]

*Example*: An institutionalized beneficiary is entitled to a monthly Social Security benefit of $320. The institution charges $700 a month for room and board. The beneficiary's brother, who is the payee, learns the beneficiary needs new shoes and does not have any funds to purchase miscellaneous items at the institution's canteen.

The payee takes his brother to town and buys him a pair of shoes for $29. He also takes the beneficiary to see a movie which costs $3. When they return to the institution, the payee gives his brother $3 to be used at the canteen.

Although the payee normally withholds only $25 a month from Social Security benefit for the beneficiary's personal needs, this month the payee deducted the above expenditures and paid the institution $10 less than he usually pays.

The above expenditures represent what we would consider to be proper expenditures for current maintenance.

20 C.F.R. § 404.2040(2)(b).

from attaching federal benefits for the care of involuntarily committed mental health patients); and *Crawford v. Gould*, 56 F.3d 1162 (9th Cir. 1995) (holding that California may not deduct the costs of caring for psychiatric inpatients from a trust account to which social security payments were deposited).

These cases are readily distinguished from the DSHS practice at issue here. Critically, none of the cited federal cases involve the expenditure of social security benefits by a state that was designated as a representative payee. In fact, the class certified in *Brinkman* specifically excluded patients for whom the state served as representative payee. *Brinkman*, 878 F.2d at 264. As explained above, under federal regulations a representative payee has considerable authority to spend the funds entrusted to its control, provided the expenditures are for the best interests of the beneficiary. 20 C.F.R. § 416.635(a).

Thus, the issue as I see it is not whether DSHS may spend the funds for current maintenance, provided it gives priority to special needs of the foster children, but whether it may use those funds to reimburse itself for *past* maintenance or for its own administrative services, such as mileage reimbursements for social workers. The fact that DSHS in the context of reimbursing itself for *past* care of the beneficiary puts its need for reimbursement ahead of the needs of the foster children further demonstrates the fundamental conflict between its roles as representative payee and creditor.

The federal mandate to give priority to the special needs of the beneficiary directly conflicts with the express policy of DSHS to conserve the expenditure of public assistance funds on foster care and thereby lighten the burden on the taxpayer. *See* chapter 74.20 RCW (Support of Dependent Children):

It is the responsibility of the state of Washington through the state department of social and health services to conserve the expenditure of public assistance funds, whenever possible, in order that such funds shall not be expended if there are private

funds available or which can be made available by judicial process or otherwise to partially or completely meet the financial needs of the children of this state.

RCW 74.20.010. The state aggressively pursues this recovery policy, not only seeking money for current maintenance but also sweeping lump sum payments into the treasury to prevent a child's account from exceeding the $2,000 resource limit imposed by the Social Security Administration (SSA).

In order to provide states with an incentive to provide financial assistance to needy individuals awaiting disposition of their Supplemental Security Income (SSI) applications, Congress provided that back payments made at the time the secretary makes the *first* payment would be exempt from the general antiattachment rule. 42 U.S.C. § 1383(g)(2). However, a recent case held that a retroactive payment after a period of denial is not the same as an initial payment and therefore does not fall under the exemption to the antiattachment rule that is found in 42 U.S.C. § 1383(g)(2). *Catarine v. Wing*, 274 A.D.2d 310, 710 N.Y.S.2d 569 (2000). *Accord Conaway v. Soc. Servs. Admin.*, 298 Md. 639, 471 A.2d 1058 (1984) (holding that the use of conserved social security benefits to reimburse the cost of past foster care is prohibited). Thus, the lump sums that DSHS "sweeps" into the treasury to reimburse the state for past foster care expenses cannot fall under the initial payment exception. There is no other exception which would validate DSHS's action.

This sweeping of lump sums is not only unauthorized under any exception to 42 U.S.C. § 407(a), but also often constitutes double reimbursement. The sums "swept" to the treasury frequently reimburse the state for amounts already paid by the federal government under Temporary Assistance for Needy Families or paid by parental support. DSHS apparently keeps no accurate record to allow tracing of the "swept" sums.

Under § 407(a), rights to future payments are not transferable or assignable.

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a). DSHS receives the payments not on its own behalf, but on behalf of the beneficiaries, and is not permitted to assign pending (i.e., future) payments to the reimbursement of its expenditures on behalf of the foster children. Where an agency puts reimbursement to itself ahead of the best interests of the child, ignoring the policy expressed in the federal regulations to prioritize the child's special needs, it effectively transfers the payments to its own use. This transfer from the state in its role as representative payee to the state in its role as guardian of the public purse is contrary to § 407(a). Where the agency pursues that policy to the extent of double reimbursement, the conflict of interest is egregious.

To the extent that RCW 74.20A.010 encourages the state to "sweep" a child's benefits into the treasury to repay past-due foster care, I agree with the majority that the statute is incompatible with § 405(j), which forbids any "substantial conflict of interest" between the payee and the beneficiary. 42 U.S.C. § 405(j)(2)(C)(iv)(II). *See also* 42 U.S.C. § 405(j)(1)(A) (mandating removal of a representative payee if the commissioner or a court of competent jurisdiction later determines that it has misused any individual's benefit.) It is also incompatible with § 407(a), which prevents transfer of the benefits. Under the Supremacy Clause of the United States Constitution, federal law takes precedence. Thus, any use of social security funds for purposes other than current care and maintenance is unlawful, as is giving priority to maintenance over the children's special needs.

## Remedies

I agree with the majority that in relying on RCW 74.20A.010, DSHS has given preference to the interests of

the taxpayer over the special needs of foster children and has acted as creditor by reimbursing itself for past payment of foster care, directly contrary to §§ 405(j) and 407(a) of the Social Security Act. But for reasons already set forth in this opinion, I would remand this matter to the trial court with directions to modify the injunction to prevent DSHS from using social security payments to reimburse the costs of *past due* foster care *or other expenses not directly related to current maintenance, and to require DSHS give special needs a higher priority than current maintenance.* On remand, the trial court should order DSHS to produce an accounting of social security fund disbursements for all children that had been in the custody of DSHS for the purpose of receiving foster care, establish restitution of social security funds used to reimburse DSHS for *past due* foster care expenses, *other expenses not directly related to current maintenance, and unmet special needs,* and determine appropriate attorney fees.

I thus respectfully concur in part and dissent in part from the majority opinion.

IRELAND, J., and GUY, J. Pro Tem., concur with BRIDGE, J.

Reconsideration denied December 14, 2001.