[No. 67680-1.   En Banc.]
Argued October 30, 2003.     Decided April 29, 2004.

GUARDIANSHIP ESTATE OF DANNY KEFFELER, ET AL.,
*Respondents*, v. THE DEPARTMENT OF SOCIAL
AND HEALTH SERVICES, ET AL.,
*Appellants*.

*Christine O. Gregoire, Attorney General,* and *William B. Collins, Senior Assistant,* and *Debra E. Casparian* and *L. Scott Lockwood, Assistants,* for appellants.

*Rodney Reinbold* and *Richard B. Price,* for respondents.

*John McKay, United States Attorney,* and *Eugene A. Studer, Assistant,* and *Deborah Kant, William Kanter, Colette Matzzie,* and *Peter D. Ke Bler,* of the United States Department of Justice, on behalf of the Commissioner of the Social Security Administration, amicus curiae.

OWENS, J. — The representative class plaintiff, Danny Keffeler, argues that the State violated the equal protection clause of the fourteenth amendment to the United States Constitution by misusing funds and refusing to exercise discretion in social security fund disbursement, causing foster children with the State as a representative payee to be treated differently from children with a private representative payee. Keffeler further argues that the State of Washington violated the due process clause of the Fourteenth Amendment by refusing to provide appropriate notice to children and their guardians before the State was chosen as a representative payee. We find that children with a state representative payee are not treated differently from children with a private representative payee and that prior federal notice sent to guardians fulfills procedural due process. Therefore, we reverse the trial court on the constitutional issues and hold that the State has not violated the equal protection or procedural due process requirements of the Fourteenth Amendment. Further, if Keffeler has concerns about the misuse of funds, he should direct his claims to the Social Security Administration (Administration).

## FACTS

Keffeler brought a class action suit in Okanogan County Superior Court challenging the State's use of foster children's social security benefits. Keffeler based his claims on constitutional and statutory violations. The court granted Keffeler summary judgment based on the State's violation of 42 U.S.C. § 407. The court also noted that the State violated procedural due process by not sufficiently notifying children and their guardians prior to appointment of the State as representative payee. Mem. Op., Clerk's Papers (CP) at 628.[1] This court affirmed the trial court on the statutory basis and therefore did not address Keffeler's constitutional claims. *Guardianship Estate of Keffeler v. Dep't of Soc. & Health Servs.*, 145 Wn.2d 1, 4, 32 P.3d 267 (2001) (*Keffeler* I), *overruled by Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 381, 123 S. Ct. 1017, 154 L. Ed. 2d 972 (2003) (*Keffeler* II). The United States Supreme Court reversed our decision and held that the State's use of benefits to reimburse itself for foster care was not a violation of 42 U.S.C. § 407. *Keffeler* II, 537 U.S. at 375, 392. Because the United States Supreme Court decided the case on a statutory basis, it did not address the constitutional claims. A motion to resume jurisdiction over the constitutional issues in the case was granted on May 29, 2003. We now review these issues de novo. *See Shoop v. Kittitas County*, 149 Wn.2d 29, 33, 65 P.3d 1194 (2003) (stating that constitutional challenges are reviewed de novo); *Fusato v. Wash. Interscholastic Activities Ass'n*, 93 Wn. App. 762, 767, 970 P.2d 774 (1999) (same).

## ISSUES

1. Did the State violate the Fourteenth Amendment's equal protection clause by misusing funds and refusing to exercise discretion in social security fund disbursement?

---

[1] Because there are two sets of Clerk's Papers separately numbered, CP refers to Clerk's Papers (1-700); SCP will refer to Supplemental Clerk's Papers (1-1913).

2. If the State is required to provide notice prior to appointment of a representative payee, is the Administration's notice adequate to satisfy procedural due process?

## ANALYSIS

### (1) LEGAL CONTEXT

The Department of Social and Health Services (DSHS) has the authority to accept custody of children from parents and juvenile courts in order to provide for the child's physical care and maintenance costs if needed. RCW 74-.13.031(6). The secretary of DSHS is the custodian of any money the child may receive while in DSHS placement. By statute, the secretary has the authority to disburse these funds "for such personal needs of such person as the secretary may deem proper and necessary," and funds may be applied "against the amount of public assistance otherwise payable to such person." RCW 74.13.060(1), (2). Therefore, under RCW 74.13.060(2), a child's funds obtained from any source may be used to reimburse any benefits paid to the child or on behalf of the child during the time the child is in DSHS placement. *See* WAC 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 (explaining that unexempted resources and unearned income of a child in foster care must be used by DSHS for the child's cost of care).[2]

One source of funds a child may receive while in DSHS custody is social security benefits. 42 U.S.C. § 401 (2000) (Title II benefits/OASDI) allows children to receive social security benefits if they are unmarried and are dependent on a wage earner entitled to these benefits who has subsequently died. *Keffeler* II, 537 U.S. at 375. 42 U.S.C. § 1381 (2000) (Title XVI benefits/SSI) allows children that are blind or disabled to receive benefits if their income and assets are below $2,000. *Id.*; *see* 42 U.S.C. § 1382 (2000). Although the two types of benefits are separate and distinct

---

[2] WAC 388-70-069 was repealed on April 30, 2001, but WAC 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 is functionally similar. *See Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 378 n.2, 123 S. Ct. 1017, 154 L. Ed. 2d 972 (2003) (*Keffeler* II).

programs, we agree with the State that for the purpose of this litigation and the issues raised, they are comparable. CP at 529.

Supplemental Security Income (SSI) and Old-Age, Survivors, and Disability Insurance (OASDI) benefits are usually distributed to the entitled individual, but the Social Security Commissioner (Commissioner) may decide to distribute the benefits to a representative payee instead. *Keffeler* II, 537 U.S. at 375-77; 42 U.S.C. §§ 405(j)(1)(A), 1383(a)(2)(A)-(ii)(I) (2000); 20 C.F.R. §§ 404.2010(b), 416.610(b) (2003). The Commissioner will choose a representative payee if it is "in the interest of such individual (*as determined by the Commissioner of Social Security* in regulations)." 42 U.S.C. § 405(j)(2)(A)(ii) (2000) (emphasis added); *see also* 42 U.S.C. § 1383(a)(2)(B)(i)(II) (2000); *Keffeler* II, 537 U.S. at 376-77. The Commissioner does an investigation and considers several factors to determine who should be the representative payee. 42 U.S.C. §§ 405(j)(2)(A)-(D), 1383(a)(2)(B) (2000); 20 C.F.R. §§ 404.2020, 416.620 (2003). Further, public institutions will not be appointed if there is another qualified person to act as a representative payee. *Keffeler* II, 537 U.S. at 376, 389-91; 20 C.F.R. §§ 404.2021(b), 416.621(b) (2003). Therefore, in most cases where the State is appointed representative payee, there is no one else to apply for or receive the benefits on behalf of the child. *Keffeler* II, 537 U.S. at 389-91; *see also* Aff. of Tamara Erickson, Suppl. Clerk's Papers (SCP) at 81-84 (explaining the duties of DSHS as a representative payee). As of September 1999, there were 10,578 children in DSHS custody, about 1,500 children received OASDI and/or SSI benefits, and DSHS acted as a representative payee for 1,411 children. *Keffeler* II, 537 U.S. at 379 & n.3.

Both a private representative payee and a state representative payee must use funds in accordance with federal and state laws and regulations. The funds may be used only for the use and benefit of the beneficiary and must be used in the best interest of the beneficiary as determined by the

representative payee. *Keffeler* II, 537 U.S. at 376-77; 20 C.F.R. §§ 404.2035, 416.635 (2003). The Commissioner has determined that benefits are used in the best interest of the beneficiary if the benefits are used for current maintenance and care: food, shelter, clothing, medical care, and personal comfort items. 20 C.F.R. §§ 404.2040, 416.640 (2003); *see also Keffeler* II, 537 U.S. at 376-77, 382-83 (stating proper use of benefits and that deference should be given to the Social Security Act and regulations). If any funds are left *"[a]fter the representative payee has used benefit payments consistent with the guidelines . . .* any remaining amount shall be conserved or invested on behalf of the beneficiary." 20 C.F.R. § 404.2045 (2003) (emphasis added); *see also* 20 C.F.R. § 416.645 (2003) ("If payments *are not needed for the beneficiary's current maintenance or reasonably foreseeable needs,* they shall be conserved or invested") (emphasis added). However, if more than $2,000 is conserved on behalf of an SSI child, the child will be ineligible for further benefits. *Keffeler* II, 537 U.S. at 390; 42 U.S.C. § 1382(a)(1)-(B), (3)(B) (2000).

Complementary to federal regulations, WAC 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 orders DSHS to use a foster child's unexempted income to cover the cost of the child's care. The regulation also orders any private representative payee to send any payments received on the foster child's behalf to the DSHS child support division.[3] When DSHS receives a child's social security benefits, the benefits are credited to a Foster Care Trust Fund Account, kept by the state treasurer. *Keffeler* II,

---

[3] In accordance with 42 U.S.C. § 407 (2000), the State is not allowed to act as a creditor and coerce private representative payees to pay support from protected benefits. However, the underlying obligation of supporting the child remains on the parents. *See* RCW 74.20A.010; WAC 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, WAC 388-14A-8100, -8105, -8110, -8120 (explaining duty of parent to provide support and how support is collected and used). Therefore, the statute does not "eliminate the underlying debt [it] merely preclude[s] states from enforcing an obligation against protected federal funds." *Fetterusso v. New York*, 898 F.2d 322, 328 (2d Cir. 1990); *see also* Aff. of Richard J. Anderson, CP at 432 (stating DSHS would not pursue legal action to coerce a private representative payee to pay DSHS for foster care).

537 U.S. at 378.[4] This fund includes subsidiary accounts for each child. *Id.* Usually, a foster care provider will purchase current maintenance needs for a child and DSHS reimburses the foster care provider according to a fixed compensation schedule. *Id.* DSHS then compares payments to a provider with the child's subsidiary trust fund account and reimburses itself for the amount it spent. *Id.* at 378, 386-88. DSHS's outlaying payments usually exceed the trust fund amount, so normally the account is left empty until the next check arrives. *Id.* at 378.

Although WAC 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 requires funds to be used for care, RCW 74.13.060(1) allows the secretary to also use funds "for such personal needs of such person as the secretary may deem proper and necessary."[5] To this end, DSHS sometimes forgos reimbursement to conserve benefits for impending emancipation or uses funds for special needs approved by the trust fund unit. *Keffeler* II, 537 U.S. at 378-79; Aff. of Karen Kegley Justinen, SCP at 34-35; *see* SCP at 53-63, 1359-61 (examples of special disbursements); SCP at 64-70 (examples of conservation of funds prior to child's emancipation). Funds not used for foster care costs, extra items, or special needs are put into a collective interest bearing savings account at a local bank, and the interest that is earned is credited to each child's separate subsidiary trust fund account. Aff. of Karen Kegley Justinen, SCP at 35.

## (2) EQUAL PROTECTION

■ ■ The Fourteenth Amendment provides equal protection of the law to all citizens: " 'persons similarly situated with respect to the legitimate purpose of the law

---

[4] 42 U.S.C. § 1383(a)(2)(F) (2000) specifies that a retroactive benefit that exceeds six times the monthly benefit may be used only for specific purposes and must be deposited into a dedicated interest bearing account. This exception does not appear to be relevant to our analysis. *See Keffeler* II, 537 U.S. at 387 n.9.

[5] State statutory allowance for use of funds to provide for children's personal needs or special needs is in accord with federal regulations. *See* 20 C.F.R. §§ 404.2040, 416.640 (2003) (listing personal comfort items as part of current maintenance).

receive like treatment.'" *State v. Schaaf*, 109 Wn.2d 1, 17, 743 P.2d 240 (1987) (quoting *State v. Phelan*, 100 Wn.2d 508, 512, 671 P.2d 1212 (1983)). Paramount to the equal protection clause is the idea that all individuals within one group must be treated equally. If this is true, then equal protection is satisfied and the analysis may end. *Amerada Hess Corp. v. Dir., Div. of Taxation*, 490 U.S. 66, 80, 109 S. Ct. 1617, 104 L. Ed. 2d 58 (1989) (finding no equal protection violation where an add-back tax provision did not have a discriminatory classification underlying the provision and the state provided a rational basis); *Hatch v. Sharp*, 919 F.2d 1266, 1269 n.4 (7th Cir. 1990) (surmising that there is no equal protection claim where all inmates were treated equally with regard to their ability to participate in the lottery).

■ Keffeler argues that 42 U.S.C. § 407 and WAC 388--25-0210 work together to create two groups of foster children based on who is appointed as the representative payee. Keffeler interprets WAC 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 narrowly and, based on the word "must" in the regulation, argues that the State may use a foster child's benefits only for the child's cost of care, while a private representative payee has the discretion to allow the State to pay for the child's cost of care and may therefore conserve the benefits. Further, 42 U.S.C. § 407 prohibits the State from using legal action to obtain the benefits from the private payee for the child's cost of care.

Keffeler's arguments fail because there are not two groups of foster children but one group: all foster children receiving social security benefits with appointed representative payees. The identity of the representative payee does not create a differentiation in this group because *all representative payees* must use the benefits according to state and federal laws and regulations. This means that the benefits first should be used for the child's cost of care and reasonably foreseeable needs. Then, only after the cost of care and foreseeable needs are provided, may the benefits be conserved or invested. 20 C.F.R. §§ 404.2045(a),

416.645(a) (2003). In accordance with 42 U.S.C. § 407, the State may not go after a private representative payee to obtain the benefits. However, if the private representative payee is not using the benefits for the child's cost of care and reasonably foreseeable needs,[6] this may violate federal regulations and the Commissioner may remove the representative payee. 20 C.F.R. §§ 404.2050, 416.650 (2003).[7]

■ Although WAC 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 states that DSHS "must use income not exempted to cover the child's cost of care," a reading of the regulation in the context of RCW 74.13.060 shows this does not eliminate discretionary disbursement. The promulgation of WAC 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 is consistent with the discretion granted to the secretary under RCW 74-.13.060 because the statute authorizes use of funds for special needs *and* for reimbursement of public assistance. Accordingly, the State does exercise discretion by using benefits for cost of care, authorizing special needs disbursements, and conserving funds prior to a child's emancipation. Because the State exercises discretion and uses social security benefits lawfully under state and federal laws and regulations, there is only one group of foster children. Therefore, we hold the State has not violated the federal equal protection clause.

■ Respondent further alleges that the State double dips, sweeps children's accounts, and uses funds for pro-

---

[6] If a child in foster care has a private representative payee, the child will still receive state supported foster care maintenance. Finding of Fact 50, SCP at 1883. However, the underlying obligation of supporting the child remains on the parents, the foster care maintenance may not cover *all* current maintenance *and all* reasonably foreseeable needs, and the representative beneficiary must still use benefits in the child's best interest. *See supra* note 3 (explaining parental obligation to support child). As the United States Supreme Court has pointed out, the Commissioner has decided that if the representative payee chooses to conserve benefits, this may not be in the best interest of the child. The best interest of the child is served by using the benefits for current maintenance and reasonably foreseeable needs, not "by maximizing a trust fund attributable to fortuitously overlapping state and federal grants." *Keffeler II*, 537 U.S. at 390.

[7] Although the Commissioner may remove a private representative payee who is not using the money for the current maintenance or reasonably foreseeable needs of the child, the Commissioner may choose not to. An administrative law judge did not remove Wanda Pierce even though she was conserving funds and DSHS was paying for Keffeler's care. CP at 137-38, 232-36.

grammatic costs. A misuse of funds may create an equal protection violation because children with private representative payees are getting full use of their benefits, but children with a state representative payee are not. However, the United States Supreme Court did not address these misuse of funds arguments but suggested Keffeler take his complaints to the Commissioner "who bears responsibility for overseeing representative payees." *Keffeler II*, 537 U.S. at 389 n.12. We agree.

The Administration is the proper place to address these complaints.[8] As the Commissioner points out in her amicus brief, under federal regulations, the Commissioner must carefully monitor all representative payees. 42 U.S.C. §§ 405(j)(3)(A), (B), 1383(a)(2)(C) (2000); *see also* Br. for the Amicus Curiae Jo Anne B. Barnhart, Comm'r of the U.S. Soc. Sec. Admin. (Amicus Br.) at 16 n.5. Upon finding a representative payee has misused benefits, the Commissioner will remove the representative payee. 42 U.S.C. §§ 405(j)(1)(A), 1383(a)(2)(A)(iii) (2000); 20 C.F.R. §§ 404.2050, 416.650 (2003); *see also* Amicus Br. at 16 n.5. Keffeler has not petitioned the Commissioner to remove the state representative payee based on these allegations. *See* Amicus Br. at 16 n.5. Therefore, we decline to decide any misuse of funds allegations. In accord with the United States Supreme Court, we suggest that Keffeler direct these claims to the Administration so the allegations can be properly investigated and the State removed if necessary.

### (3) PROCEDURAL DUE PROCESS

■■ The federal due process clause requires that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950); U.S. CONST. amend. XIV, § 1. Notice must be " 'rea-

---

[8] Any argument pertaining to 42 U.S.C. § 1383(a)(2)(F) (2000) dedicated fund misuse should likewise be addressed to the Commissioner. *See supra* note 4 (explaining dedicated funds).

sonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Olympic Forest Prods., Inc. v. Chaussee Corp.*, 82 Wn.2d 418, 422, 511 P.2d 1002 (1973) (quoting *Mullane*, 339 U.S. at 314). The form of due process may vary and the court should use a balancing test to decide if procedures are sufficient to satisfy due process. *Mathews v. Eldridge*, 424 U.S. 319, 334-35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). The court must consider three factors: (1) the private interest affected by an official action, (2) the risk of erroneous deprivation of such interest through the procedures used and the value of additional procedural safeguards, and (3) the governmental interest, including the cost and administrative burden of additional procedures. *Id.* at 335; *see also McGrath v. Weinberger*, 541 F.2d 249, 253-54 (10th Cir. 1976) (holding that under the *Mathews* balancing test prior notice and an opportunity to be heard was not necessary where a beneficiary was being deprived of only the free use of his social security benefits because he was incapable of managing his own benefits).

■ Here, Keffeler argues the State's official action affects a private interest: appointment of a representative payee may affect a foster child's usage of benefits depending on the representative payee's identity. Although the Administration is the agency that appoints the payee, not the State,[9] and the agency sends out a notice prior to appointment of a representative payee, Keffeler argues this notice is insufficient. We disagree and find the notice is sufficient to cover any notification responsibility the State may have.

Currently, the Administration sends out a written notice to the legal guardian or legal representative of beneficiaries under 15, or unemancipated minors under 18, in advance of certification of payment to a representative payee. 42

---

[9] *See* 42 U.S.C. §§ 405(j)(1)(A), 1383(a)(2)(A) (2000) (stating that if *the Commissioner* decides the beneficiary's interest would be served by a representative payee, then payments shall be made to the payee).

U.S.C. §§ 405(j)(2)(E)(i)-(iii), 1383(a)(2)(B)(xii) (2000).[10] The notice identifies the person or entity to be designated as the representative payee and encourages the beneficiary/ guardian to contact the agency if he/she disagrees with this determination. 20 C.F.R. §§ 404.2030, 416.630 (2003); *see* CP at 140 (example of a notice sent to Wanda Pierce, Keffeler's guardian). If the person disagrees with the choice, he/she has a right to a hearing by the Commissioner and judicial review of the Commissioner's final decision. 42 U.S.C. §§ 405(j)(2)(E)(i)-(iii), 1383(a)(2)(B)(xi)-(xiii) (2000); 20 C.F.R. §§ 404.2030, 416.630 (2003).[11]

The risk of erroneous deprivation of any private interest the children may have is low because the notice notifies the beneficiary/guardian of the appointment prior to any payment and encourages the beneficiary/guardian to contact the agency if he/she disagrees. Additional procedures are unnecessary because the identity of a representative payee does not influence eligibility for benefits and all representative payees must use the benefits in accordance with federal and state laws and regulations. Further, the Commissioner does an investigation of potential representative payees prior to appointment, and the Commissioner may remove a representative payee if misuse of funds is found.

Moreover, the governmental interest in not implementing additional procedures is high. Keffeler suggests sending notice to the juvenile court and assigning an attorney to each child to either find another representative payee or start a judicial guardianship. These procedures would impose substantial costs on the State and result in a small benefit for the children. *See Mathews*, 424 U.S. at 348 (explaining that the benefit of safeguards is sometimes

---

[10] Although 20 C.F.R. §§ 404.2030 and 416.630 (2003) say generally the beneficiary/legal guardian is notified, both 42 U.S.C. §§ 405(j)(2)(E)(ii) and 1383(a)(2)(B)(xii) (2000) state that the Commissioner "shall provide written notice" prior to the first payment to a representative payee. The word "shall" indicates that this prior notice is mandatory.

[11] Although the notice sent to Wanda Pierce did not explain her rights to a hearing and judicial review, it did encourage her to contact the agency if she disagreed with the Commissioner's determination. *See* CP at 140. Further, Keffeler does not argue that notice is insufficient on this basis.

outweighed by the cost). Usually, the State is appointed as representative payee only if there is no one else. Therefore, a decision by the Commissioner that the State should serve as representative payee indicates that a search for another payee would be fruitless. While the juvenile court is considered the guardian of the child, *State ex rel. Richey v. Superior Court*, 59 Wn.2d 872, 876, 371 P.2d 51 (1962), sending notice to the court is unnecessary because the court has entrusted the custody of the child to DSHS. RCW 74.13.031(6).

In conclusion, we find the State has not violated procedural due process. The federal notice sent to beneficiaries and their guardians is sufficient to fulfill any procedural due process rights the children may have. Any potential private interest in additional notice is outweighed by the State's interest in efficient administration of its foster care program.

## COSTS

RAP 14.1(b) states that the appellate court that accepts review and makes a final determination of the case determines and awards costs. Here, Keffeler has failed to show any constitutional violation and the State has prevailed on review. Accordingly, Keffeler's request for attorney's fees is denied and we decline to award the State costs.

## CONCLUSION

We reverse the trial court on the constitutional issues and find the State did not violate the Fourteenth Amendment equal protection or procedural due process requirements. There is no equal protection violation because there is only one group of foster care children with representative payees and no differentiation is created in the group based on who is appointed as a representative payee. Both a private representative payee and a State representative payee may use discretion in deciding how to use a child's funds. However, both payees must follow state and federal laws

and regulations and use any benefits received on the child's behalf for the best interest of the child. Money is used for the best interest of the child when it is used for current maintenance and reasonably foreseeable needs. If Keffeler has concerns about State misuse of funds, he should direct his claims to the Administration. Further, any potential procedural due process right a child and his/her guardian has to notice before a representative payee is appointed is fulfilled by the Administration's prior notice of appointment. Finally, we decline to award attorney's fees or costs to either party.

ALEXANDER, C.J.; JOHNSON, MADSEN, IRELAND, and BRIDGE, JJ.; and BAKER, J. Pro Tem., concur.

SANDERS, J., (dissenting) — If a foster child were entitled to Supplemental Security Income (SSI) benefits or Old-Age, Survivors, and Disability Insurance (OASDI) benefits, or both, who would *he* rather have as his representative payee, the State or grandma? I posit the answer to the question does not require a degree in rocket science but is well within the comprehension of the average well-informed six-year-old.

Regardless of where the federal government sends the money, the Department of Social and Health Services (DSHS) is required by statute "to provide child welfare services," RCW 74.13.031, which includes "mak[ing] payment of maintenance costs if needed," RCW 74.13.031(6). In essence, the State must furnish a basic level of support, no matter what. But the child that draws the short straw and winds up with DSHS as his or her representative payee will find these additional SSI benefits confiscated by the State to reimburse itself; whereas the child with the private payee will enjoy the higher standard of living resulting from a combination of both state and federal benefits. *See* RCW 74.13.060(2); former WAC 388-70-069, *repealed by* St. Reg. 01-08-047 (Apr. 30, 2001); WAC 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.

If the child is fortunate enough to have grandma step forward to be the representative payee, grandma may take or

direct this money for the child's use and benefit in addition to DSHS's basic level of foster care. Even though DSHS tells her by regulation that she should reimburse DSHS, WAC 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(2), the State cannot force or compel reimbursement as 42 U.S.C. § 407(a) bars such a proceeding. *See Bennett v. Arkansas*, 485 U.S. 395, 397-98, 108 S. Ct. 1204, 99 L. Ed. 2d 455 (1988) (per curiam); *Philpott v. Essex County Welfare Bd.*, 409 U.S. 413, 415-16, 93 S. Ct. 590, 34 L. Ed. 2d 608 (1973). However if DSHS is the representative payee, the SSI benefits will be taken by the State to reimburse itself for foster care.

Both grandma, as the private representative payee, and DSHS, as the representative payee for the less fortunate, must use the OASDI and SSI benefits "only for the use and benefit of the beneficiary in a manner and for the purposes he or she determines, under the guidelines [specific to each type of payment], to be in the best interests of the beneficiary." 20 C.F.R. §§ 404.2035(a) (OASDI benefits), 416.635(a) (SSI benefits). Grandma and DSHS satisfy this requirement as a matter of law if the benefits are used for "current maintenance," which includes "cost incurred in obtaining food, shelter, clothing, medical care, and personal comfort items." *Id.* §§ 404.2040(a), 416.640(a).

The federal statute (42 U.S.C. § 407(a)) is not violated if the State reimburses itself. *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 386-87, 123 S. Ct. 1017, 154 L. Ed. 2d 972 (2003) (hereinafter *Keffeler*). Likewise the statute neither requires reimbursement by the private representative payee nor allows the State to compel it. The ultimate issue is the disparate treatment that results.

A *private* representative payee does not violate his or her duties by using the foster child's social security benefits to provide "current maintenance" over and above the bare minimum provided by DSHS. No case stands for this proposition. The Social Security Administration (SSA) envisions *both* SSI benefits and OASDI benefits can be combined, at least in some cases, to supplement benefits pro-

vided by individual states for the benefit of the child. *See* SSA's Program Operations Manual System, SI 00830.410(A)-(2) (July 31, 2003), *available at* http://policy.ssa.gov/poms.nsf (last visited Apr. 26, 2004). Though not warranting a *Chevron*[12] level of deference because it lacks the force of law, *see United States v. Mead Corp.*, 533 U.S. 218, 226-27, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001), the SSA's interpretation is entitled to some judicial deference. *See Keffeler*, 537 U.S. at 385-86; *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944). In sum, nothing prevents grandma from using SSI and/or OASDI benefits to better the child's situation from the bare minimum provided by the State, and nothing compels her to use the SSI money to reimburse the State.

One can imagine many benefits the child with a private payee might enjoy through the supplemental use of these SSI benefits not available to his or her government counterpart. By illustration, when the child who has the beneficent DSHS as her representative payee is having gruel for breakfast, grandma is serving steak and eggs. When the State's child is watching sitcoms on TV, grandma's is off to the movies. When the State's child finds a pair of knock-off sneakers underneath the Christmas tree, grandma has wrapped a new pair of Nikes. When the kids reach their teenage years and would benefit from travel around the region, the State's child is stuck waiting at the depot to take a thrilling ride on Seattle's wonderful new light rail (indulge me here),[13] yet grandma may use the added benefits under her control to enable the child to visit the Vancouver aquarium by car or provide her grandson some other

---

[12] *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).

[13] How long she will have to wait at the depot for the light rail to be constructed and then operational is still up in the air, so hopefully she brings warm clothes, a book to read, and a construction helmet. *See Sane Transit v. Sound Transit*, 151 Wn.2d 60, 78-79, 85 P.3d 346 (2004) (regional transit authority has indefinite time to build light rail).

valuable educational and enriching experiences.[14] And when the State's child turns 18 she's on her own, but grandma may set aside up to $2,000 from the social security to help her grandson get started without losing SSI eligibility. 20 C.F.R. §§ 404.2045, 416.645 (requiring benefits to be conserved or invested if not necessary for current maintenance); *accord* Clerk's Papers at 1882 (Trial Court's Findings of Fact on Order of Remand from Supreme Court (May 30, 2000)) (finding DSHS confiscated $662,897 of the $785,952 it received in SSI and/or OASDI benefits in sample of 48 randomly drawn accounts).

These are just some of the reasons to love grandma more than DSHS.

But our love for grandma should not turn into a "so what" for the poor foster sister—and it doesn't have to because the equal protection clause mandates, "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. The girl next door doesn't have a grandma to be her representative payee and has no choice but for the State to act as both a mailbox and depository of her benefits. 20 C.F.R. §§ 404.2021(b), 416.621(b) (public agency has lowest priority when seeking to become representative payee). This wasn't her fault. It just happened. "Stuff happens," Defense Secretary Rumsfeld says. Marc Sandalow, *Rumsfeld calls looting an "untidiness,"* S.F. Chron., Apr. 12, 2003, at A10, *available at* http://www.sfgate.com (last visited Apr. 26, 2004).

True, not every distinction or questionable public policy amounts to an equal protection violation, *Heller v. Doe*, 509 U.S. 312, 319, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993); however when no reasonable basis exists to justify the disparate treatment, even the deferential rational basis test will not save it. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 447-48, 105 S. Ct. 3249, 87 L. Ed. 2d 313

---

[14] A beneficiary's automobile valued at $4,500 or less does not count against the $2,000 threshold above which SSI benefits discontinue. 20 C.F.R. § 416.1218(b)(2). There is no value limitation if the automobile is necessary for the disabled beneficiary's employment or medical condition. *Id.* § 416.1218(b)(1).

(1985) (denial of special use permit to build facility for mentally retarded not rationally related to legitimate government purpose); *Jimenez v. Weinberger* 417 U.S. 628, 633-34, 94 S. Ct. 2496, 41 L. Ed. 2d 363 (1974) (denial of social security benefits to child based solely on child's illegitimacy violates rational basis). Of course the government wants the money, but that's not sufficient reason to take it from the girl next door while leaving grandma alone. *Conklin v. Shinpoch*, 107 Wn.2d 410, 421, 730 P.2d 643 (1986) (fiscal enhancement alone may not serve as basis for discriminatory classification).

The majority obscures the point by talking about this case as not involving two groups but one, as if semantics really matters. Fundamental to any equal protection analysis is the constitutional "direction that all persons similarly situated should be treated alike." *Cleburne Living Ctr.*, 473 U.S. at 439. Here there are foster children who have a private payee and benefit from their social security benefits in addition to their foster care allowance, and DSHS children who don't have the benefit of their social security payments. Even if we were examining "one group," majority at 340, children *within* the group are treated unequally for no more reason than one has a private and the other a public payee. That, however, is not a rationale to justify different treatment, only a happenstance without logical force which prefers one child over another based on the status of the representative payee, an equal protection violation if I ever saw one.

I dissent.

CHAMBERS, J. (concurring in dissent) — I concur in result with Justice Sanders' dissent. These statutes and regulations create two different classes of foster children: those with kind hearted individual designated payees and those with the Department of Social and Health Services as the designated payee. *See* RCW 74.13.031; WAC 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; 42 U.S.C. § 407(a). Members of the first class receive the direct benefit of monthly Supplemental Security Income

and/or Old-Age, Survivors, and Disability Insurance. Members of the second class receive the benefit only indirectly mediated by the State's coffers. *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 375-76, 123 S. Ct. 1017, 154 L. Ed. 2d 972 (2003). I find no rational basis for treating these children differently. Accordingly, I respectfully join in dissent.

Reconsideration denied July 16, 2004.