[No. 25302-0-II.   Division Two.   August 23, 2005.]

KENNETH KOLBESON ET AL., *Appellants*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent*.

*Thomas C. Fox*, for appellants.

*Robert M. McKenna, Attorney General*, and *Carrie L. Bashaw* and *Ian M. Bauer, Assistants*, for respondent.

¶1 HOUGHTON, J. — Kenneth Kolbeson, Renae Brunette, and Janis White (collectively, Kolbeson, unless noted) were patients at Western State Hospital (WSH). They challenge the Department of Social and Health Service's (DSHS) use of their Social Security benefits to offset the cost of hospitalization. We affirm.

## FACTS

¶2 At all relevant times, Kolbeson was an involuntarily committed patient at WSH. He received Old-Age, Survivors, and Disability Insurance (OASDI) benefits from the Social Security Administration (SSA). These benefits were his only source of income. He had no other assets, savings, or resources. The SSA appointed DSHS as his representative payee.[1]

¶3 As a patient at WSH, Kolbeson is liable to reimburse the State for the cost of hospitalization. RCW 43.20B.330. When determining his ability to pay these charges, DSHS examined his available resources. It included the OASDI benefits in this calculation. On January 7, 1999, it notified him of the assessment in a Notice and Finding of Responsibility (NFR). The NFR stated that he was liable to "pay a maximum of $16.15 per day." Administrative R. (Kolbeson) at 49.

¶4 Kolbeson requested an administrative hearing.[2] An administrative law judge determined that DSHS correctly established his liability. The Board of Appeals affirmed.

¶5 Kolbeson first petitioned for superior court review on July 26, 1999, but then sought our direct review. On September 24, the superior court entered an agreed order consolidating the Kolbeson, Brunette, and White cases. It then certified the consolidated cases for direct review, which we granted.

---

[1] More precisely, the SSA appointed WSH as the representative payee. The parties discuss DSHS's status as the representative payee, likely because WSH is a DSHS facility. For clarity, we do the same.

[2] Given Kolbeson's appeal, DSHS has not made any payments from his OASDI benefits to offset the cost of care.

¶6 On the parties' motion, we stayed the appeal pending a decision in *Guardianship Estate of Keffeler v. Department of Social & Health Services*, 145 Wn.2d 1, 32 P.3d 267 (2001) (*Keffeler* I). After our Supreme Court issued its mandate on July 16, 2004, we lifted the stay and this appeal proceeded.

## ANALYSIS

### STATUTORY FRAMEWORK

### A. Federal Law

¶7 Subchapter II of the Social Security Act (the Act) details the plan of benefits for elderly and disabled workers, along with their survivors and dependents. 42 U.S.C. §§ 401-434. The Commissioner of Social Security has authority to promulgate rules under subchapter II. 42 U.S.C. § 405(a).

¶8 Generally, the SSA pays OASDI benefits directly to the beneficiary. *See* 20 C.F.R. § 404.2001(b)(1) (stating that beneficiaries have the right to manage their own benefits). If the SSA determines that the beneficiary cannot manage the benefits in his own interests, it appoints a representative payee. 20 C.F.R. § 404.2001(a).

¶9 When selecting a representative payee, the SSA gives priority to the beneficiary's legal guardian, spouse, or relative. 20 C.F.R. § 404.2021(a)(1). It allows public agencies to serve as the representative payee, but these agencies have lesser priority. 20 C.F.R. § 404.2021(a)(3).

¶10 SSA regulations govern the representative payee's use of benefits. After appointing a representative payee, the SSA distributes benefits for the beneficiary's "use and benefit." 42 U.S.C. § 405(j)(1)(A). Benefits are used for the "use and benefit" of the beneficiary when applied toward his "current maintenance." 20 C.F.R. § 404.2040(a)(1).

¶11 The SSA generally defines "current maintenance" to include "cost[s] incurred in obtaining food, shelter, clothing, medical care, and personal comfort items." 20 C.F.R. § 404.2040(a)(1). The representative payee may also apply benefits toward the beneficiary's institutional care:

If a beneficiary is receiving care in a Federal, State, or private institution because of mental or physical incapacity, current maintenance includes the customary charges made by the institution, as well as expenditures for those items which will aid in the beneficiary's recovery or release from the institution or expenses for personal needs which will improve the beneficiary's conditions while in the institution.

20 C.F.R. § 404.2040(b). If any funds remain, the payee must conserve or invest those funds, holding them in trust for the beneficiary. 20 C.F.R. § 404.2045(a).

¶12 The Act limits the use of benefits to pay current and former debts. With respect to debts arising before the SSA appointed a representative payee, "[a] payee may not be required to use benefit payments to satisfy a debt of the beneficiary." 20 C.F.R. § 404.2040(d). But the payee may satisfy the debt if the beneficiary's current and reasonably foreseeable needs have been met. 20 C.F.R. § 404.2040(d).

¶13 The Act also contains an "anti-attachment" section, the provision at issue here. Section 407(a) protects OASDI benefits from "execution, levy, attachment, garnishment, or other legal process." 42 U.S.C. § 407(a).

¶14 The representative payee must provide the Commissioner with an annual accounting.[3] 42 U.S.C. § 405 (j)(3)(A). If the Commissioner "has reason to believe" that a payee is misusing funds, she may order a report at any time. 42 U.S.C. § 405(j)(3)(D). Misuse of the beneficiary's funds is a criminal offense calling for revocation of the payee's appointment. 42 U.S.C. § 405(j)(1)(A) (revocation of appointment); 42 U.S.C. § 408(a) (misuse of funds is a felony); *see also* 20 C.F.R. § 404.2050 (detailing when the SSA will select a new payee).

## B. State Law

¶15 All persons committed to WSH are liable to reimburse the State for the costs of their hospitalization. RCW

---

[3] Some state institutions participate in onsite review programs. 20 C.F.R. § 404.2065. It is unclear from the record whether DSHS provides annual accountings or participates in onsite reviews.

43.20B.330. DSHS may investigate a patient's financial condition to determine his ability to pay hospitalization charges. RCW 43.20B.335. When making this determination, DSHS examines the patient's assets, including any "cash, stocks, bonds, savings, security interests, insurance benefits, guardianship funds, trust funds, *governmental benefits*, pension benefits and personal property." Former WAC 275-16-035(1) (1999) (emphasis added). It then applies a formula to determine the patient's ability to pay adjusted charges. Former WAC 275-16-065(3) (1999).

¶16 If DSHS finds that the patient can pay all or part of the charges, it issues an NFR. RCW 43.20B.340. If the patient disagrees with DSHS's finding, he may apply for an administrative hearing under to the Administrative Procedure Act, chapter 34.05 RCW. RCW 43.20B.340.

¶17 Given this statutory overview, we next address the merits of Kolbeson's claim.

## 42 U.S.C. § 407(a) CLAIM

¶18 Kolbeson claims that the NFR functions as a "levy" or "other legal process" within the meaning of 42 U.S.C. § 407(a). He further asserts that DSHS "places itself in a preferred creditor position" when it issues the NFR. Appellants' Br. at 24. We disagree.

¶19 As a question of law, we review the statutory claim de novo, giving due deference to the SSA's regulations. *See Brinkman v. Rahm*, 878 F.2d 263, 265 (9th Cir. 1989) (interpretation of 42 U.S.C. § 407 reviewed de novo); *see also Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 382, 123 S. Ct. 1017, 154 L. Ed. 2d 972 (2003) (*Keffeler* II) (the Court owes deference to SSA's regulations).

¶20 The parties dispute whether the United States Supreme Court's opinion in *Keffeler* II governs this appeal. Thus, we first provide an overview of that decision.

¶21 In *Keffeler* II, the Supreme Court examined whether "the State's use of Social Security benefits to reimburse

itself for some of its initial expenditures" for the care of foster children violated 42 U.S.C. § 407(a) of the Act. 537 U.S. at 375.

¶22 Through DSHS, the state of Washington provided foster care for children without able guardians. *Keffeler* II, 537 U.S. at 377. Although the State gave this care "without strings attached," its policy was " 'to attempt to recover the costs of foster care from the parents of [the] children.' " *Keffeler* II, 537 U.S. at 378 (alteration in original) (quoting *Keffeler* I, 145 Wn.2d at 6). Among other financial resources, it used the foster child's Social Security benefits " 'on behalf of the child to help pay for the cost of the foster care received.' " *Keffeler* II, 537 U.S. at 378 (quoting former WAC 388-70-069(1) (2001)).

¶23 DSHS served as the representative payee for some of the State's foster children. *Keffeler* II, 537 U.S. at 379. When it received benefits for those children, it credited a special trust fund account. *Keffeler* II, 537 U.S. at 378. The foster care provider expended funds on the child's behalf. *Keffeler* II, 537 U.S. at 378. DSHS then paid the provider, drawing on the trust fund for reimbursement. *Keffeler* II, 537 U.S. at 378.

¶24 Keffeler brought a class action lawsuit on behalf of foster care children who received Social Security benefits and for whom DSHS served as the representative payee. *Keffeler* II, 537 U.S. at 379. He alleged that DSHS's use of the benefits violated 42 U.S.C. § 407(a), the Act's anti-attachment provision. *Keffeler* II, 537 U.S. at 379.

¶25 Reversing the decision below, the Supreme Court rejected Keffeler's 42 U.S.C. § 407(a) claim. *Keffeler* II, 537 U.S. at 392. The Court held that (1) DSHS did not act as a creditor and (2) its actions did not constitute an " 'execution, levy, attachment, garnishment, or other legal process.' " *Keffeler* II, 537 U.S. at 382 (quoting 42 U.S.C. § 407(a)).

## A. Levy

¶26 Kolbeson first contends that the NFR constitutes a "levy" under 42 U.S.C. § 407(a).

¶27 Subchapter II of the Act does not define the term "levy." *Black's Law Dictionary* provides several definitions. It states that "levy" means "4. [t]o take or seize property in execution of a judgment." BLACK'S LAW DICTIONARY 927 (8th ed. 2004). But "levy" also means "[t]he imposition of a fine or tax." BLACK'S, *supra*, at 926.

¶28 *Keffeler* II provides guidance on this issue. The Court examined two of DSHS's actions: (1) its efforts to become the representative payee and (2) its use of Social Security benefits to reimburse itself for the cost of foster care. *Keffeler* II, 537 U.S. at 382. It held that neither action constituted an "execution, levy, attachment, or garnishment." *Keffeler* II, 537 U.S. at 383. Noting that "[t]hese legal terms of art refer to formal procedures by which one person gains a degree of control over property otherwise subject to the control of another, and generally involve some form of judicial authorization," the Court held that DSHS's actions "do not even arguably employ any of these traditional procedures." *Keffeler* II, 537 U.S. at 383. *Keffeler* II, then, indicates that the first definition is the more appropriate.

¶29 But Kolbeson asserts that *Keffeler* II does not control, directing our attention to the Washington Administrative Code (WAC). Using a formula, DSHS determines the patient's ability to pay adjusted charges. Former WAC 275-16-065(3). "Adjusted charges" are defined as

> those charges *levied* upon a patient who is or has been confined to a state hospital for the mentally ill, either by voluntary or involuntary admission, . . . which are less than the actual cost of hospitalization . . . which has been established by the issuance of a notice of finding of responsibility.

Former WAC 275-16-015(1) (1999) (emphasis added).

¶30 Here, the NFR does not constitute a "levy" within the meaning of 42 U.S.C. § 407(a). Assuming,

without holding, that the NFR represents the conclusion of a "formal procedure," DSHS controls the benefits as the representative payee. *Keffeler* II, 537 U.S. at 383. It is not "gain[ing] a degree of control over property *otherwise subject to the control of another*" and does not seek any form of judicial intervention. *Keffeler* II, 537 U.S. at 383 (emphasis added). Nor is it seizing property in execution of a judgment. It uses Kolbeson's Social Security benefits to pay for his current maintenance. And under 20 C.F.R. § 404.2040(b), current maintenance includes the "customary charges" of a state mental hospital. The NFR simply reflects DSHS's determination of his ability to pay.

¶31 Nothing in former WAC 275-16-015(1) changes this analysis. Its reference to a "levy" is different than the usage in 42 U.S.C. § 407(a). Within the meaning of former WAC 275-16-015(1), the word "levy" is a passing reference to the imposition of a financial charge. It is not the type of "levy" contemplated by 42 U.S.C. § 407(a).

## B. Other Legal Process

¶32 Kolbeson next contends that DSHS engages in a type of "legal process" prohibited by 42 U.S.C. § 407(a) when it (1) "determines and establishes the debt" and (2) then collects that debt. Appellants' Am. Reply Br. at 6, 7.

¶33 Again, *Keffeler* II is instructive. When examining whether DSHS's actions involved "other legal process," the Court noted that "in the abstract," DSHS indeed used a form of legal process: "by a federal legal process the Commissioner appoints the department [as] representative payee, and by a state legal process the department makes claims against the accounts kept by the state treasurer." *Keffeler* II, 537 U.S. at 384 (footnote omitted).

¶34 But the Court observed that the statute used the phrase "other legal process" restrictively. *Keffeler* II, 537 U.S. at 384. Using the canons of construction, the Court determined that this phrase had a narrow meaning in the context of 42 U.S.C. § 407(a):

"[O]ther legal process" should be understood to be process much like the processes of execution, levy, attachment, and garnishment, and at a minimum, would seem to require utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability.

*Keffeler* II, 537 U.S. at 385. Additionally, the Court noted that this reading was consistent with the SSA's interpretation. *Keffeler* II, 537 U.S. at 385. Applying this narrow definition, the Court held that DSHS's actions were appropriate.[4] *Keffeler* II, 537 U.S. at 386.

¶35 Here, Kolbeson challenges two actions: (1) the determination of his ability to pay and (2) the application of his benefits toward the cost of care. Both actions are permissible.

¶36 With respect to the financial assessment, Kolbeson has an existing liability under RCW 43.20B.330. But DSHS has possession and control of the benefits as the representative payee. Thus, "control over property [did not] pass[ ] from one person to another in order to discharge or secure

---

[4] In support of his argument, Kolbeson cites *Brinkman*. Similar to this matter, *Brinkman* involved a class of patients involuntarily committed at WSH. 878 F.2d at 264. In *Brinkman*, however, the State did not serve as the representative payee. 878 F.2d at 264. Instead, it deducted the funds from the patients' hospital accounts. *Brinkman*, 878 F.2d at 265. The Ninth Circuit held that 42 U.S.C. § 407 barred the State from seeking reimbursement from the patients' Social Security funds. *Brinkman*, 878 F.2d at 265-66.

*Brinkman* differs factually from the matter at hand. Notably, the State was not the representative payee. *Brinkman*, 878 F.2d at 264. Accordingly, when it removed Social Security funds from the patients' hospital accounts, it seized property under another's possession and control. Because DSHS controls Kolbeson's benefits and has regulatory authority to use the benefits for the cost of his care, *Brinkman* does not control.

Nor can he rely on *Bennett v. Arkansas*, 485 U.S. 395, 108 S. Ct. 1204, 99 L. Ed. 2d 455 (1988) and *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 93 S. Ct. 590, 34 L. Ed. 2d 608 (1973). These cases are inapposite. In both cases, the SSA paid benefits directly to the beneficiary. *Bennett*, 485 U.S. at 396; *Philpott*, 409 U.S. at 414. And as noted in *Keffeler* II, each case "involved judicial actions in which a State sought to attach a beneficiary's Social Security benefits." *Keffeler* II, 537 U.S. at 388. *Bennett* and *Philpott* are simply inapplicable here, where DSHS serves as the representative payee and where it never initiated judicial action.

discharge" of that liability. *Keffeler* II, 537 U.S. at 385. DSHS's assessment constitutes an administrative review that has not ripened to judgment.[5] And although this administrative review of Kolbeson's available assets is perhaps a "legal process" under a broad reading of the statute, the Court rejected an expansive reading of this phrase in *Keffeler* II.

¶37 Applying Kolbeson's benefits to offset the cost of his hospitalization is also proper. As noted, DSHS controls his benefits, subject to the regulations governing their use. These regulations expressly authorize the representative payee to apply benefits toward the cost of institutional care. 20 C.F.R. § 404.2040(b). Thus, DSHS used benefits, in its full possession and control, for Kolbeson's current maintenance without judicial intervention. This action is not prohibited by 42 U.S.C. § 407(a).

¶38 Accordingly, DSHS's financial assessment and application of benefits toward the cost of hospitalization are not "other legal process[es]" under 42 U.S.C. § 407(a) of the Act.

## C. Preferred Creditor

¶39 Next, Kolbeson contends that when DSHS "imposes a debt and collects that debt as no other creditor could, it places itself in a preferred creditor position." Appellants' Br. at 24.

¶40 We turn again to *Keffeler* II. There, the Court criticized our Supreme Court's characterization of DSHS's actions as " 'creditor-type.' " *Keffeler* II, 537 U.S. at 382. The Court noted that neither 42 U.S.C. § 407(a) nor the SSA regulations interpreting that provision mention the term "creditors." *Keffeler* II, 537 U.S. at 382. In fact, the Act and accompanying regulations permit certain creditors to serve as representative payees, 42 U.S.C. § 405(j)(2)(C)(iii), and allow payees to satisfy former debts when the beneficiary's current and reasonably foreseeable needs have been met,

---

[5] It is important to note that DSHS could not secure payment through legal action. *See* 42 U.S.C. § 407(a).

20 C.F.R. § 404.2040(d). *Keffeler* II, 537 U.S. at 382. Finally, the Court observed that "[n]o law provides that [the children] are liable to repay the department for the costs of their care." *Keffeler* II, 537 U.S. at 382.

¶41 In support of his argument, Kolbeson cites *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 93 S. Ct. 590, 34 L. Ed. 2d 608 (1973). There, Wilkes applied to a New Jersey welfare board for financial assistance. *Philpott*, 409 U.S. at 413-14. Before receiving that assistance, Wilkes agreed to reimburse the board. *Philpott*, 409 U.S. at 414. Later, the SSA awarded Wilkes retroactive disability benefits. *Philpott*, 409 U.S. at 414. These funds were deposited into a bank account. *Philpott*, 409 U.S. at 415. Under the reimbursement agreement, the welfare board sued to reach the bank account. *Philpott*, 409 U.S. at 415.

¶42 The Supreme Court held that 42 U.S.C. § 407(a) barred this claim. *Philpott*, 409 U.S. at 415. New Jersey argued that 42 U.S.C. § 407(a) contained an implied exemption for states, but the Court rejected this theory:

> We see no reason why a State, performing its statutory duty to take care of the needy, should be in a preferred position as compared with any other creditor.
>
> . . . .
>
> . . . [Section] 407 does not refer to any "claim of creditors"; it imposes a broad bar against the use of any legal process to reach all social security benefits. That is broad enough to include all claimants, including a State.

*Philpott*, 409 U.S. at 416-17.

¶43 Here, DSHS does not become a "preferred creditor" when it uses Kolbeson's benefits for his current maintenance. As noted in *Keffeler* II, 42 U.S.C. § 407(a) and the corresponding regulations do not refer to creditors. And although Kolbeson is financially liable for his care, the regulations authorize applying benefits toward the hospitalization cost. 20 C.F.R. § 404.2040(b). This case is unlike *Philpott*, where the State sued to attach Social Security benefits. 409 U.S. at 415. If the State had prevailed in

*Philpott*, it could have subverted the creditors' interests with higher priority. But here, DSHS does not use legal process to reach Kolbeson's benefits. Instead, it merely reimburses itself for the cost of hospitalization, an action consistent with 42 U.S.C. § 407(a).

EQUAL PROTECTION

¶44 Citing *Brinkman*, Kolbeson further contends that when DSHS "counted" his Social Security benefits as a financial asset, it violated the equal protection clause of the Fourteenth Amendment. He asserts that "there are two classes of patients at [W]estern [S]tate [H]ospital who have social security income: those that have a legally enforceable debt for [the] cost of care and those that have no debt." Appellants' Am. Reply Br. at 1.

¶45 The equal protection clause of the Fourteenth Amendment provides that no state shall " 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982)).

¶46 Kolbeson cites *Brinkman*, arguing that "the Ninth Circuit upheld the District Court decision that the State may not <u>count</u> Social Security income in calculating the hospital debt." Appellants' Br. at 21. But the Ninth Circuit expressly declined to rule on that "counting" issue: "The issue of 'counting' OASDI funds . . . [to] determin[e] the ability of the patients to pay, *was never before the district court*." *Brinkman*, 878 F.2d at 266 (emphasis added). Thus, Kolbeson places misguided reliance on that case.[6]

---

[6] In *Brinkman*, the district court enjoined DSHS from "counting" Social Security benefits "for purposes of determining liability to the state," but it did not rule on any "counting" for purposes of "determining the ability of the patients to pay." 878 F.2d at 266. At first glance, this distinction seems negligible. But it, in fact, controls. Assessing liability is distinct from assessing of a patient's ability to pay that liability. The district court enjoined DSHS from seizing benefits over which it

¶47 DSHS directs our attention to *Guardianship Estate of Keffeler v. Department of Social & Health Services*, 151 Wn.2d 331, 339, 88 P.3d 949 (2004) (*Keffeler* III), where our Supreme Court addressed the foster children's equal protection claim. Keffeler claimed that together, 42 U.S.C. § 407 and WAC 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[7] created two groups of foster children based on the identity of the representative payee. *Keffeler* III, 151 Wn.2d at 340. Based on his reading of WAC 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, Keffeler argued that a State representative payee could only use the benefits for the child's cost of care, whereas a private payee had discretion to conserve the funds. *Keffeler* III, 151 Wn.2d at 340. Should the private payee decline to allocate benefits toward the cost of care, 42 U.S.C. § 407 then precluded the State from initiating legal action to obtain those benefits. *Keffeler* III, 151 Wn.2d at 340.

¶48 Our Supreme Court rejected this argument, stating that there was only one group of foster children, namely, all foster children for whom the SSA appointed representative payees. *Keffeler* III, 151 Wn.2d at 340. Further, "[t]he identity of the representative payee does not create a differentiation in this group because *all representative payees* must use the benefits according to state and federal laws and regulations." *Keffeler* III, 151 Wn.2d at 340. Under those rules and regulations, all representative payees must use benefits first for the child's cost of care and reasonably foreseeable needs. *Keffeler* III, 151 Wn.2d at 340. Only after

---

did not have possession and control to discharge any liability. *Brinkman*, 878 F.2d at 266. Thus, DSHS could not "count" benefits to determine that patient's liability. *Brinkman*, 878 F.2d at 266. In this case, Kolbeson claims that DSHS cannot "count" the benefits when assessing his ability to pay. As noted by the Ninth Circuit, it did not decide that issue. *Brinkman*, then, is distinguishable.

[7] In relevant part, WAC 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 provides as follows:

(1) Unearned income includes Supplemental Security Income (SSI) . . . or any other payments for which the child is eligible, unless specifically exempted by the terms and conditions of the receipt of the income. The department must use income not exempted to cover the child's cost of care, except for resources held in trust for an American Indian child.

(2) Any person, agency or court that receives payments on behalf of a child in out-of-home care must send the payments to the department's division of child support.

burse the State for the costs of their hospitalization. RCW the payee provides for those needs may it conserve or invest the remaining benefits. *Keffeler* III, 151 Wn.2d at 340. Although the State cannot use legal action to compel payment of benefits, a private representative payee's failure to use the benefits for the child's cost of care may violate federal regulations, resulting in his removal as the payee. *Keffeler* III, 151 Wn.2d at 341.

¶49 Here, *Keffeler* III controls. Kolbeson contends that there are two classes of patients at WSH. First, he identifies a class of patients with an enforceable debt, namely, those for whom DSHS is the representative payee. Second, he identifies a class of patients without an enforceable debt, namely, those who directly receive benefits or have a private representative payee. Our Supreme Court rejected this argument, albeit one dressed in different clothing.

¶50 Just like the foster children in *Keffeler* III, there is a single relevant class: all patients for whom the SSA appointed a representative payee. Regardless of their identity, all payees must follow the pertinent laws regarding benefit payments. *See* 20 C.F.R. §§ 404.2001-.2065. As DSHS correctly notes, Kolbeson's "argument rests on the untenable premise that a private representative payee has no obligation to contribute to the cost of a beneficiary's current maintenance." Resp't's Br. at 24. But payees must use benefits for the beneficiary's current maintenance, including care from a state mental institution. 20 C.F.R. § 404.2040(b). Certainly, a private payee could refuse to apply benefits toward hospitalization costs. And the State could not reach those benefits through legal action. But should the payee misuse those funds, he is subject to criminal sanction and removal.

¶51 Because there is only one class of plaintiffs, there is no basis for an equal protection claim.

FORMER WAC 275-16-035 AND FORMER WAC 388-511-1160

¶52 Next, Kolbeson argues that former WAC 275--16-035 and former WAC 388-511-1160 (Supp. 1998) "prohibit inclusion of federally protected Social Security funds" as a financial resource. Appellants' Br. at 18-19.

¶53 Former WAC 275-16-035 lists those financial resources properly considered when DSHS determines the patient's available assets. It provides, in pertinent part:

> (1) The department will include, but not necessarily be limited to, in their determination of the assets of the estates of present and former patients of state hospitals for the mentally ill and their responsible relatives, cash, stocks, bonds, savings, security interests, insurance benefits, guardianship funds, trust funds, *governmental benefits*, pension benefits and personal property.
>
> . . . .
>
> (3) In determining if a particular asset is available to the estate of a patient who is eligible or potentially eligible for Medicaid,[8] the determination officer will apply the standards of [former] WAC [388-511-1160].

Former WAC 275-16-035 (emphasis added).

¶54 Former WAC 388-511-1160 then delineates exemptions related to Social Security. In relevant part, it states that DSHS "shall exempt the following resources in determining eligibility for medical care programs: . . . (1) Other resources considered exempt by federal statute." Former WAC 388-511-1160(1)(1).

¶55 Here, Kolbeson places misguided reliance on these agency rules. Former WAC 275-16-035(1) expressly allows DSHS to consider governmental benefits. And, as discussed above, his benefits are not exempt under 42 U.S.C. § 407(a) of the Act.

¶56 Kolbeson's argument fails.

---

[8] Without citation to the record, Kolbeson states that he is eligible or potentially eligible for Medicaid. For purposes of the analysis, we assume this is true.

BREACH OF FIDUCIARY DUTY

¶57 Finally, Kolbeson asserts that when DSHS "acts as both payee and creditor, [it] breaches its' common law fiduciary duty." Appellants' Br. at 25. We disagree.

¶58 Assuming DSHS has a fiduciary duty to Kolbeson, he failed to prove any breach of that duty. As explained, DSHS's actions are consistent with state and federal law. If Kolbeson suspects misuse of his benefits, this complaint should properly be directed to the SSA Commissioner. 42 U.S.C. § 405(j) (Commissioner provides oversight of representative payees); *see also Keffeler* II, 537 U.S. at 390 n.12; *Keffeler* III, 151 Wn.2d at 342.

¶59 Affirmed.

VAN DEREN, A.C.J., and BRIDGEWATER, J., concur.